## Mitchell *et al.*, to use, *versus* The Lycoming Mutual Insurance Company.

1. A breach of a covenant, in a policy, not to insure beyond two-thirds of the estimated value, is a forfeiture of the policy.

2. Where other policies, which are alleged to create the over-insurance, are *void* at the time of the loss, they are no obstacle to a recovery on the policy on which the claim is made; but if *voidable* only for some breach of condition for which the insurers might avoid them, but which they had waived, the over-insurance exists.

3. The question of identity of the property, where the description is different in two policies, is for the jury; where there is no dispute as to identity, but the question as to the terms of the different policies is the same, this, being a subject of comparison between writings, is for the court.

4. An agent of an insurance company, whose duty is to take surveys, receive applications for insurance, examine the circumstances of a loss, approve assignments and receive assessments, is not authorized to accept notice of over-insurance or waive its consequences.

5. A person insured in a mutual insurance company is a member of it, and is bound to become informed of its rules and regulations.

ERROR to the Court of Common Pleas of *Indiana county*, in which this was an action of covenant on a policy of insurance by John Mitchell and William C. Boyle, to the use of David Ellis and Conrad Hoffman, against the Lycoming Mutual Insurance Company.

The case was tried before, and resulted in a verdict for the plaintiffs, but the judgment was reversed by the Supreme Court (12 Wright 367) and a new trial awarded.

The policy was issued December 10th 1855 to Mitchell & Boyle, the then owners of the premises; the property was insured for $5000, and was described as " a new frame steam-power grist-mill, with machinery, engine and fixtures," and its value was fixed at $11,810; and it was stipulated by the policy, that the aggregate amount insured in that and other companies should not exceed two-thirds of the estimated cash value. Boyle conveyed his interest to Mitchell. Mitchell effected further insurance: $3500 in the Cumberland Valley Company, $1750 in the Pittsburgh Life,

&c., Insurance Company, and $1750 in the Pennsylvania Insurance Company of Pittsburgh. In the policy of the Cumberland Valley Company, the property was described as "a three-story frame steam flouring-mill, forty-seven by seventy feet, one-story boiler-house attached on it, twenty-four by forty-five, one room used as store and one with corn dryer." Mitchell afterwards conveyed to Ralston, Ellis & Carter, and with both conveyances the policy was transferred to the purchasers, and the transfer assented to by the agent of the company, McCabe, reciting in the last, that the same property was insured in the Cumberland Valley Company for $3500. It was afterwards sold by the sheriff, while held by Ralston, Ellis & Carter, under judgments obtained against Mitchell whilst the owner. The purchaser at sheriff's sale sold to Ellis, and Ellis sold an undivided half to Hoffman, January 24th 1859. All the policies, including that in suit, were transferred to Ellis & Hoffman with the approval of the companies.

One of the conditions of the Pittsburgh policies was: "And should there, during the life of the policy, an encumbrance be executed on the property insured, or if it shall be levied upon or taken into possession or custody under an execution or other proceeding at law or equity, and the assured shall neglect or fail to obtain the consent of the company thereto, then and in that case the policy shall be void."

Large liens had been entered against Mitchell, and against Ralston, Carter & Ellis, before the sheriff's sale, and some against Hoffman & Ellis after, and some transfers of parts of the property had been made. The property was entirely destroyed by fire, August 10th 1859. The insurance by the Cumberland Valley Company was paid in full, and that by one of the Pittsburgh Companies compromised at $1250.

Premium notes had been given by Mitchell, Ralston, Ellis & Carter, and Ellis & Hoffman, and assessments paid on them whilst they respectively held the property. There was evidence that when the agent of the Lycoming Company was at one time collecting an assessment, Ellis produced all the policies, the agent looked over them and said that they were all right.

The verdict was for the defendant.

The errors assigned were, that the court (Buffington, P. J.) erred:—

1. In charging the jury, "as the application includes stock, grain, &c., to the amount of $3190, making an aggregate with mill, fixtures, &c., of $15,000, I was inclined, from the tenor of reference in the policy, to consider this stock as included in the insurance, but upon a more careful reading of the policy, I am satisfied the reference is merely for a description of the property insured, and not as including the stock in the policy. We are, therefore, to exclude that from the valuation, and only apply the

contract of insurance to the mill and fixtures, the value of which is fixed at $11,810."

2. In charging the jury: " The valuation in this case being fixed at $11,810, and the aggregate policies being $12,000, of course the limits of the right of the plaintiffs to insure would be greatly exceeded, and this would certainly operate as a forfeiture of this policy."

3. In the answer to the plaintiffs' first point, which point and answer are : " That under the policy of insurance now in suit, the following stipulation in the policy, viz., ' it is also agreed that the aggregate amount of insurance, in this and other companies, on this property, shall not exceed two-thirds of the estimated cash value,' is a covenant only and not a condition, the breach of which will not be a forfeiture of the policy, but its breach may be compensated in damages, or may be set off by defendants."

Answer : " Be the reasons, however, what they may, the Supreme Court has settled the question in other and former cases, and also on this policy, and ruled that the insurance beyond two-thirds the value was a forfeiture, unless the breach of the policy was communicated to the company, and with this knowledge before them waived the forfeiture."

4. In the answer to the plaintiffs' second point, which was : " That the policy in this case is not void on the ground of over-insurance, unless the alleged over-insurance arose from other insurances which were valid and subsisting at the time of the loss."

Answer : " This point as a general proposition is correct. If it rested on this policy alone, it is not pretended there was an over-insurance. It is the existence of other policies beyond the limited amount that gives rise to the excess. Policies to have that effect must be subsisting and available. If they were void from the beginning, had expired by their own limitation, or became void by matter subsequent, they would not constitute an obstacle in the plaintiffs' way. If, however, they were available at any time before the loss, and thus operated as a forfeiture of defendants' policy, and became otherwise by the default of the plaintiffs themselves, they cannot be permitted to avail themselves of it, and by that means restore the policy of the defendants."

5. In answering the plaintiffs' third point, which point and answer are : " That the policies of insurance No.          in the Pittsburgh Life, Fire and Marine Insurance Company, and No.          in the Pennsylvania Insurance Company, were not valid and subsisting policies at the time of the loss, on the ground that encumbrances were executed on the property, and alienations made of portions of it after the policies were made, and so far as these are concerned there was no insurance."

[Mitchell v. Lycoming Mutual Ins. Co.]

Answer: "The ground upon which it is sought to avoid the policies is as set forth in the third and fourth points of plaintiffs. The third point, as I read it, assumes that there were such encumbrances created, and such assignments as avoided the policies. There were, as the evidence shows, such liens and encumbrances as might have avoided these policies of the Pittsburgh companies; but having been renewed from time to time and assessments paid, the plaintiffs themselves averring them to be subsisting by swearing to their existence in their notice of loss, by instituting suits in this county, and in one case accepting a compromise, it does not lie in the mouth of plaintiffs to avoid them in this case. We do not look upon these facts as rendering them absolutely void, but voidable only, and if the plaintiffs insist upon their availability, and the company acquiesced and compromised, they would be subsisting and available so far as the parties treated them, and at least as to the company compromising. Whether under any circumstances third parties can insist upon contracts between others, when those others have not availed themselves of it, may be doubtful. Perhaps they may in some instances, where the contract is absolutely void or manifestly at an end; but where the plaintiffs aver their availability it does not become them to blow hot and cold, and in a proceeding with other parties, not parties to the contract, insist on them being void. We therefore answer the third point in the negative."

6. In answering the plaintiffs' fourth point, which point and answer are: "That there is no over-insurance by reason of taking the policies in the Cumberland Valley Protection Company, the Pittsburgh Life, Fire and Marine, and the Pennsylvania Insurance Companies, for the reason that the risk is not the same as that in the Lycoming Insurance Company policy, and on that ground the plaintiffs are entitled to recover."

Answer: "In the case of the Cumberland Valley Company and the other companies, they are sought to be avoided because the risk is not the same; the description of the premises and property being different from the defendants' policy. I have examined all these policies carefully and compared them, and as I read them, there is no substantial difference. There is simply a variation in phraseology, but none in the substantial description of the property. We therefore answer the fourth point in the negative."

7. In answering the plaintiffs' fifth point, which point and answer are: "That there is no over-insurance by reason of taking the policies in the Cumberland Valley Protection Company, inasmuch as they do not, with the Lycoming Insurance Company policy, make the insurance more than two-thirds of the estimated value."

Answer: "We cannot answer this point as requested. Throwing out of view entirely the Pittsburgh policies, the matter would

stand thus : the value of the property being $11,810, the two-thirds would be $7873.32 ; that was the extent to which the plaintiffs could go consistently with their covenants in Lycoming Company ; if they did go beyond that, we have seen that it avoided the policy in suit. The amount of this policy is $5000, and the amount insured in the Cumberland Valley Company being $3500, together making $8500, which exceeds the limits of their right to insure to the amount of $626.68. This over-insurance would be as effectual, to avoid the defendants' policies, as if the Pittsburgh policies were also included. This fifth point is also answered in the negative."

8. In answering plaintiffs' sixth point, which point and answer are : " That if the Cumberland Valley insurance does create an insurance beyond the two-thirds of the estimated value, the endorsements on the policy, by Mr. McCabe, the agent of the Lycoming Company, would be a waiver of the right of the company to claim a forfeiture."

Answer : " The answer to plaintiffs' sixth point involves some review of the facts. McCabe was a local agent. His power of attorney defined his powers and duties in conformity with the by-laws ; they were to make surveys, and take and transmit applications for insurance, serve notices and collect assessments. He had no power to issue policies, or bind the company by any contract ; that function was withheld from his powers, and vested alone in the company or the secretary. There can be no doubt that what an agent says and does, while engaged in the discharge of a duty, is part of the act, and binding upon the principal. While engaged merely in assenting to an assignment, what he said and did in reference to that, would be a part of the act, and as such binding on the company ; but anything said or done on other subjects than the one engaged in, his act would not bind the company, unless transmitted and ratified. At the time McCabe approved the transfer from Mitchell to Ralston, Carter & Ellis the Cumberland Valley policies were laid before him, but there is no notice that he transmitted them to the company, or that they knew of or ratified them. Nothing more occurred on these occasions than a simple inspection of the policies, from which it is sought to affect the company with a ratification. Suppose McCabe had expressly ratified them in terms, would it have bound the company ? We think not, considering that McCabe had no more power to ratify than he had to issue original policies to bind the company.

" Snyder's testimony, in regard to the interviews at the mill with Ellis, is seriously questioned. Assuming it, however, to be true, it proves that McCabe came to the mill for what purpose ? Merely to serve a notice of an assessment, No. 15. While thus engaged, Ellis complained that he had lost a receipt, and McCabe

[Mitchell *v.* Lycoming Mutual Ins. Co.]

endorsed an acknowledgment of the receipt on the notice. In the course of the interview the policies were all produced, and McCabe looked at them, and said they were all right. If he even had the power to ratify, I doubt whether this casual inspection, without having his attention drawn toward ratification, would operate as such. But as mentioned above, we do not think he had any such power, and that his knowledge of the existence of these policies, without apprising the company of them, would not operate as a ratification. This sixth point is therefore answered in the negative."

9. In charging the jury: "The result, then, of the whole case is this: the policy in suit provides for a forfeiture in case of excessive insurance. The valuation was $11,810. The aggregate insurance was $12,000, a great excess, that if valid, would entirely work a forfeiture. We think, so far as regards this case, they are all to be considered as valid. But if the Pittsburgh policies were even unavailable, still this policy and the Cumberland Valley ones exceeded the amount by upwards of $600. Even this would operate as a forfeiture.

10. In charging the jury, "the policy was therefore void, for excessive insurance, unless ratified with a knowledge of the facts. There is no evidence, nor indeed any pretence, that the company either knew of these or other policies, or in any direct way ratified them."

11. In charging the jury, "that McCabe did not pretend to ratify directly, with a view to revive and resuscitate that which was null and void, that the facts proved as to his acts in that matter would not operate to bind the company with renewal, as his powers were limited, and he was not acting with reference to the subject-matter of the forfeiture or waiver."

12. In charging the jury, "that the policy was forfeited and void, and the plaintiffs cannot recover, and that the verdict will be for defendants."

*Foster* and *Stewart*, for plaintiffs in error.—1. The stipulation in the policy against over-insurance was a covenant, not a condition. Courts incline against a construction which will destroy the contract, unless constrained by the clear and express terms of the contract: Paschall *v.* Passmore, 3 Harris 307 ; Inland Ins. and Deposit Co. *v.* Stauffer, 9 Casey 403 ; West Branch Co. *v.* Helfenstein, 4 Wright 298 ; 2 Am. L. C. 629. If the existence of the contract was to depend upon compliance with stipulations, apt words for that purpose should have been used. The policy has a proviso that in case of other insurance, the insured shall not recover a greater proportion of the loss than the amount insured by the policy shall bear to the whole amount insured. Taking the two clauses together no injury could accrue to the company,

[Mitchell *v.* Lycoming Mutual Ins. Co.]

as it would not be liable to pay more than its proportion of two-thirds of the value: Howard Ins. Co. *v.* Scribner, 5 Hill 298; Haley *v.* Dorchester Mutual Ins. Co., 1 Allen 536.

2. If there was no legal liability of other companies to pay on the policies creating the over-insurance, there was no over-insurance. The proposition applies to the insurance of the Pittsburgh companies: Stacey *v.* Franklin Fire Ins. Co., 2 W. & S. 544; Jackson *v.* Massachusetts Mutual Ins. Co., 23 Pick. 418; Clark *v.* New England Mutual Fire Ins. Co., 6 Cush. 342; Hardy *v.* Union Mutual Ins. Co., 4 Allen 217; Haley *v.* Dorchester Mutual Ins. Co., *supra*. The Pittsburgh companies' policies required consent to encumbrances and executions. Both existed, and these two policies were therefore void: Pennsylvania Ins. Co. *v.* Gattsman's Ex'r., 12 Wright 151. Nor were plaintiffs estopped because they had compromised with one of the companies: Hardy *v.* Union Mutual Fire Ins. Co., *supra*.

3. The court decided that the same property was insured in the Cumberland Valley and Lycoming policies. To create a double insurance the risk must be the same, and that is a question for the jury: Howard Ins. Co. *v.* Scribner, *supra;* Sloat *v.* Royal Ins. Co., Leg. Journ. October 31st 1864, per Read, J., in Sup. Court.

4. The over-insurance if it existed was waived by McCabe, the agent; this may be done by acts; Cumberland Valley Ins. Co. *v.* Hoffman, in Sup. Court, not reported; Coursin *v.* Pennsylvania Ins. Co., 10 Wright 323. The fact of waiver is for the jury. The agent endorsed and approved of the transfer reciting the existence of the Cumberland Valley Company's insurance, and took premium notes and payments with the knowledge of that insurance. The company not having made known the limitation of the power of their agents, are bound by their acts: Franklin Fire Ins. Co. *v.* Massey, 9 Casey 221; Sykes *v.* Perry County Mutual Ins. Co., 10 Id. 79; McEwen *v.* Montgomery Ins. Co., 5 Hill 105; Grant *v.* Howard Ins. Co., Id. 101.

*T. & H. White* and *H. W. Weir*, for defendants in error.—In this case, 12 Wright 373, this court has declared that over-insurance is a forfeiture. So in Lycoming Ins. Co. *v.* Slockbower, 2 Casey 199. Stipulations in policies must be literally fulfilled, or the policy becomes void: Williams *v.* New England Mutual Ins. Co., 31 Me. 219; Glendale Woollen Co. *v.* Protection Ins. Co., 21 Conn. 19; State Mutual *v.* Arthurs, 6 Casey 332.

No one is held to have waived his rights unless he acts with a knowledge of them. Knowledge of an agent cannot affect the company: Finley *v.* Lycoming Ins. Co., 6 Casey 314; Kennedy *v.* St. Lawrence, 10 Barb. 289; Sykes *v.* Perry Mutual, 10

Casey 81; Jennings v. Chenango Ins. Co., 2 Denio 79; also, Smith v. Insurance Company, 12 Harris 320.

The difference in description was merely the different manner of taking the agents of the respective companies. An insurance on the mill would include all its parts: Bigler v. N. Y. Central Ins. Co., 20 Barb. 635.

A policy whose validity depends upon compliance with something extrinsic is voidable only in case of non-compliance; as was ruled in this case in this court. Until avoided, it is a subsisting policy: Carpenter v. Providence Ins. Co., 10 Peters 509; Viole v. Genesee Mutual Ins. Co., 19 Barb. 440; David v. Hartford Ins. Co., Sup. Court of Iowa, April Term, 1862.

It would be an anomaly to try the validity of policies when the parties were not before the court, and to declare a policy void when the company had paid a large sum to be released from their liability on it.

The opinion of the court was delivered, March 12th 1866, by

AGNEW, J.—We agree with the learned judge in the court below that this policy was only upon the mill, machinery, engine and fixtures, excluding the flour, barrels, &c., and the valuation therefore was $11,810. We also concur with him, that a breach of the covenant not to insure beyond two-thirds of the estimated value, was a forfeiture of the policy. This was our judgment when this case was here before (12 Wright 368), and the point had been decided in Lycoming Ins. Co. v. Slockbower, 2 Casey 199. We see no reason to retract. Good faith is the life-breath of insurance where a heavy risk is taken for a small premium. The right to insure ad libitum is detrimental to good faith, leading always to carelessness and often to fraud. The limitation of the insurance to two-thirds of the estimated value is therefore essential to secure fidelity, and to make the assured watchful over his own interest in the remainder. It is a fundamental condition in procuring the policy. Its violation runs back, therefore, to the issuing of the policy, and undermines the very ground on which its origin stands; and forfeiture is the necessary penalty and protection of the contract. The covenant against insurance over two-thirds has no relation to the pro rata clause, which refers to additional insurance when less than two-thirds. The over-insurance was attempted to be surmounted by the alleged invalidity of the subsequent policies. We think the court adopted the proper distinction—if they were void at the time of the loss they constituted no obstacle; but if voidable only by reason of some breach of condition enabling the insurers to avoid them but which they had waived, the over-insurance undoubtedly existed. None of the cited cases to be looked upon as authority carry the doctrine

[Mitchell *v.* Lycoming Mutual Ins. Co.]

beyond. Omitting the Pittsburgh policies, the two granted by the Cumberland Valley Company, added to the one in suit, made the total insurance $8500, which is more than the two-thirds of the estimated value. These two were not void, either in the beginning or afterwards, and had not expired by efflux of time, and were actually sued and paid. The plaintiff was therefore driven to contend that they did not cover the same property, and complains here that this fact ought to have been submitted to the jury. Had the question been one of identity in the application of the terms of the description to the property described, it belonged to the jury. But this was not the real question before the court. There was no dispute as to the identity of the property described, but the real question was, whether the terms of the two Cumberland Valley policies were substantially the same as the terms of the policy in suit. This was a subject of comparison between the writings, and not of extrinsic proof; unless, indeed, the plaintiff had given evidence of the property described which would vary the application of the language to the subjects of description in the different policies. But, without this proof, the jury would have nothing to determine their decision but the language of the policies, which would be to refer to them the mere construction of the writings, contrary to the rule which gives it to the court. We agree with the learned judge that substantially the description in the different policies is the same.

Failing in this, the plaintiff next resorted to the allegation that the defendants knew the fact of over-insurance and waived it. There is no proof of actual knowledge—the contrary is expressly proved. But McCabe, the agent who consented to the assignment of the policy by Mitchell to Ralston, Ellis and Carter, undoubtedly did know of it, and made a memorandum of the subsequent policies in the same writing containing his consent. This brings up the extent of his authority and his power to commit the company by his knowledge. He held a written appointment as local agent of the company under a bond for his faithful performance of the duties required of him in accordance with the by-laws. The section read in evidence made it the duty of the agent to take surveys and receive applications for insurance, and, when required, to examine into the circumstances of a loss and make report. Under the regulations printed on the back of the policy the agent is also empowered to approve of assignments of the policy following a sale of the property, and to demand payment of assessments. Now it is very clear none of these powers authorize an agent to accept notice of over-insurance, and visit the company with a waiver of its consequences. Indeed no notice is required to be given of additional insurance within the limit until the assured comes to make proof of his loss, and then merely to enable the company to avail itself

[Mitchell *v.* Lycoming Mutual Ins. Co.]

of its right to pay but *pro rata*. But the act of over-insurance is a forbidden act and not the subject of authorized waiver, by any officer or agent under the rules and regulations prescribed. It is on the principle of estoppel and not of authority, the waiver takes effect. The knowledge of a mere agent unauthorized to represent the company beyond the specific powers committed to him, cannot be the ground of estoppel in a matter unconnected with the exercise of his powers. This can take place only when the knowledge, lying at the foundation of the estoppel, comes home to these officers who exercise the corporate powers of the company, or to an agent whose powers relate to the very subject out of which the estoppel arises. These general principles are made doubly binding upon the assured in this instance by his relation. He becomes a member of the corporation by the act of insurance, and therefore bound to become informed of its rules and regulations: Hackney *v.* Allegheny Mutual Ins. Co., 4 Barr 185. These views dispose of the testimony of Snyder, the notice of assessment and acknowledgment of payment endorsed, and McCabe's written memorandum. His being engaged in the notification or collection of assessments or approval of the assignment, carried with it no authority to receive notice of the over-insurance and no duty to communicate it to the company. As a member of this company, the plaintiff was no stranger to the powers committed to the local agents under its rules and regulations. He had no right to believe that notice to this agent could relieve him from the forfeiture of his policy, or that his knowledge was notice to the company. No implied waiver or estoppel, therefore, arose out of his knowledge.

This disposes of all the questions in the cause.

Judgment affirmed.