# Elliott *versus* The Lycoming County Mutual Insurance Co.

1. A fire policy contained: "*It is agreed*, That the aggregate amount insured in this and other companies, on the above-mentioned property, shall not exceed two-thirds of the estimated cash value." *Held*, that the estimated value was that at the time of insurance.

2. The value of buildings was estimated when insured at $1950, and the amount insured $1300; additions were made; the agent of the company certified that he had examined and the addition did not increase the risk. $1000 more was then insured in another company; the buildings were burned. At the time of the fire the value of the buildings was $4200. *Held*, that the first policy was forfeited for over insurance.

3. If a company after notice of over insurance make and collect assessments, they treat the contract as still subsisting and are estopped from setting up a forfeiture.

4. An over insurance was made and afterwards an assessment was made; the treasurer discovering the error, notified the local agent not to collect it; the agent forgetting his instructions demanded it, but recollecting them, did not collect it. *Held*, not to be a waiver by the company.

5. Under these facts, waiver was for the court.

6. A judge is not bound to submit a mere spark of evidence ; there must be enough to raise a reasonable question for decision.

7. An insurance was on a house and stable in one policy ; an over insurance was made on the house; both were burned; the company tendered payment for the loss on the stable. *Held*, not to be an affirmance of the contract, so as to estop them from setting up a forfeiture as to the house.

8. Payment of money into court when the declaration is on a special contract, admits the contract so as to supersede the necessity of proving it.

9. Payment of money into court is the acknowledgment of the right of action to the amount brought in, but not beyond that.

10. Such payment waives no defence, although the defence be to the whole.

11. After such payment the case goes on substantially as if the money had not been paid in ; the defendant may take a defence which goes to the whole cause of action.

May 17th 1870. Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.

Error to the Court of Common Pleas of *Blair county* : No. 11, to May Term 1869.

This was an action of covenant on a policy of insurance, to July Term 1866, by Elisha Elliott against the Lycoming Mutual Insurance Company.

The case was tried May 5th 1866, before Taylor, P. J.

The plaintiff gave in evidence policy No. 80,156, dated July

11th 1864, from the defendants to the plaintiff for insurance on his buildings in Altoona, as follows, viz.:—

"A two-story frame dwelling-house in Altoona, Blair co.　$1150
　　Also, a stable, in rear of house　．　　．　　．　　．　　150

　　　(Known as the "Dougherty House.")　．　　．　$1300
Estimated cash value, $1950."

One of the stipulations in the policy was: "It is also agreed, that the aggregate amount insured in this and other companies, on the above-mentioned property, shall not exceed two-thirds of the estimated cash value."

He gave evidence that he had made considerable repairs and additions to the house which were completed in 1865, and that the value of property generally had increased very much since the insurance had been effected: also, the certificate of A. McCormick, the agent of the defendants, dated June 22d 1865, viz.:—

"I do certify, that I have seen the alterations made by Elisha Elliott to the hotel known as the 'Dougherty House,' and would say that the risk of the said house is not greater than it was before the alterations were made."

On the 2d of March 1866, the plaintiff made an additional insurance for $1000 on the hotel, in The North American Insurance Company.

The buildings were destroyed by fire on the 14th of March 1866 and due notice was given to the company. There was evidence that at the time of the fire the hotel was worth $4200. The plaintiff gave evidence that an assessment was made on him for the property, on the 18th of January 1865 for $585: and another assessment made May 7th 1866—after the fire—for $780; the duplicate of the assessment was forwarded May 8th by mail to W. H. Whitall, the agent of the company.

The defendants gave evidence by Whitall, that he had been directed by the company by a letter (which was read), received on the 9th or 10th of May, not to collect the last assessment, as the executive committee of the company were deliberating and might decide to resist the plaintiff's claim.

On cross-examination he said that inadvertently, notwithstanding his instructions, he had called on the plaintiff for the assessment: "I made the remark that the assessment had been made by the company. Mr. Elliott put his hand into his pocket, remarking that he did not think he ought to pay that assessment. I discovered on opening my book a memorandum I made on the margin of the assessment duplicate that called to my mind at once the instructions I had received from the treasurer. I made some remark and left as quick as possible. I never told him the amount of the assessment, and made no formal demand, further than to remark that an assessment had been made." They gave evidence

to show that this assessment was made by the treasurer in mistake, and their agent was informed immediately. Witness also testified that in June 1866 he tendered the plaintiff $39.50. They gave in evidence the plaintiff's application for insurance, in which appears " estimated value $1950."

Plaintiff in rebuttal gave evidence that the damage to the stable was from $40 to $70.

The defendants on the trial tendered $39.50 and that sum was paid into court.

Judge Taylor charged the jury :— * * * [" But it is expressly the estimated value set down in the policy by the parties at the time of the insurance, which determines this question. The stipulation relates expressly to 'the estimated cash value' in the policy. And the estimated cash value in the policy is $1950. It is agreed that the aggregate amount insured by this and other companies shall not exceed two-thirds of the estimated cash value, referring expressly to the value which the parties fixed by their estimate and set upon it, in their policy of insurance; and a careful examination of the cases upon this subject shows that any additional insurance which raised the amount beyond the sum so fixed by the parties, is an over-insurance. * * * In view of the stipulation, there can be no recovery in the policy unless the company waived it. It is of no consequence that the property afterwards became more valuable.] It may be that if Mr. Elliott had gone to this company for additional insurance, when he effected the second insurance in the other company, he might have obtained another policy, and that no difficulty of this kind would or could have arisen. But it is sufficient to say that it is the contract of the parties as they made it with which we have to deal.

" Was there a waiver of the over-insurance ? * * * It is well settled, that this stipulation, introduced for the security of the company, may be waived by the company, either directly or expressly, or by acts which imply it, or amount to an estoppel, and preclude them from asserting the over-insurance in answer to a claim upon the policy. Is there evidence here to be submitted from which you may infer or find a waiver ? * * *

" We have no hesitation in saying that if a single assessment had been collected from Mr. Elliott, with a knowledge on the part of the company of the over-insurance at the time, it would be a waiver. But they did not exact anything from him [and it seems to us quite clear that when the only evidence relied upon here to show a waiver, is the fact that an assessment was made by *mistake* when the company were at the time contemplating resistance to this claim, and which was not collected, or paid by him, and when nothing was done tending in any way to mislead or injure him, it is not sufficient; and we are of opinion that this does not amount

to a waiver, and that we should not, upon this evidence, submit it to you as a question of fact. The conclusion, therefore, is, and we so instruct you, that the plaintiff cannot recover on this policy for the amount insured upon the house.]

" There is a further claim for the partial loss of the stable, not covered by the second policy. There is no over-insurance as to that alleged. What was considered the correct item of this loss— $39.50—is shown to have been tendered to the plaintiff, and has been brought into court. No objection is made to that item, and there is no controversy respecting it, except as to the amount of it. If the amount brought into court was tendered to the plaintiff before this action was brought, and covers the whole loss or damage to the stable, the plaintiff is not entitled to recover any-thing here; for he ought to have accepted it, and still may take it out of court: but if the sum tendered fall short of the just and correct amount, as you assess and find the damages from the evidence, then you should find for the plaintiff such sum as you deem just and right. * * *

" The counsel of the plaintiff here makes the point, and asks us to instruct you that ' the tender of the money for the admitted loss to the stable, is a recognition of the validity of the policy, and, therefore, the plaintiff is entitled to recover the whole of it;' which instruction we refuse to give you."

The verdict was for the plaintiff for $66.83.

The plaintiff took a writ of error and assigned for error the parts of the charge in brackets.

D. J. Neff and L. W. Hall, for plaintiff in error, cited Coursin v. The Penna. Ins. Co., 10 Wright 323; The Cumberland Mut. Prot. Co. v. Mitchell, 12 Wright 374; Lycoming County Mutual Insurance Company v. Schollenberger, 8 Id. 259; Same v. Stocklomn, 3 Grant's Cases 207.

S. M. Woodcock and Scott, for defendants in error, cited Mitchell v. Lycoming Ins. Co., 1 P. F. Smith 402; Ins. Co. v. Stockbower, 2 Casey 199; Cooper v. Farmers' Mutual Ins. Co., 14 Wright 299; Angell Ins. 253 and note; Ogden v. Ash, 1 Dallas 164.

The opinion of the court was delivered, July 7th 1870, by

SHARSWOOD, J.—It was decided in The Insurance Company v. Stockbower, 2 Casey 199, that when a policy of insurance pro-vides " that the aggregate amount insured in this and other com-panies, on the above-mentioned property, shall not exceed two-thirds of the estimated cash value," any further insurance being in violation of the agreement renders the policy void. To the same effect is Mitchell v. The Lycoming Mutual Insurance Com-

[Elliott *v.* Lycoming County Mutual Ins. Co.]

pany, 1 P. F. Smith 402.    The question raised upon this record
is, what is meant by the estimated cash value?    Is it the esti-
mated cash value at the time of the insurance as settled by the
parties and named in the policy, or the actual cash value at the
time a second or further insurance is effected?    There is no serious
difficulty in resolving this question.    The policy upon which this
suit was brought after the stating the amounts insured on the pro-
perties described, adds "Estimated cash value 1950 dollars."
When therefore the same instrument in a subsequent part speaks
of the estimated cash value it must be held in all fairness to refer
to the sum before named as much so as if it had been expressed.
Nor can it alter the contract that the insured afterwards made
improvements, which greatly augmented the actual cash value, and
that the company had notice of these alterations and endorsed a
certificate that the risk was not thereby increased.    The contract
still remained unchanged.    The estimated cash value by which
the insured agreed to be governed in procuring other insurances
was still the same.    Both parties must agree to another estimate;
and if the estimate named in the policy was not the criterion, then
there was none.    There is no authority at law or in equity to
reform the contract by substituting "actual" for "estimated."
The estimate was one in which the company had concurred, and
by which they were therefore bound.    They did not concur in any
other estimate, which the insured might put upon it, or which a
jury might subsequently agree upon.    The plaintiff, before obtain-
ing an additional insurance, ought to have procured the estimated
cash value in the policy to be changed and made to conform to the
actual augmented value in consequence of his improvements.    It
is unfortunate that he neglected to take this simple precaution,
but having failed to do so, it is not in the power of chancellor or
jury to help him.

It is stoutly maintained, however, that there was evidence of a
waiver, which ought to have been submitted to the jury.    Un-
doubtedly, if the company, after notice or knowledge of the over-
insurance, treated the contract as subsisting by making and col-
lecting assessments under it upon the assured, they could not
afterwards set up its forfeiture.    It would be an estoppel which is
the true ground upon which the doctrine of waiver in such cases
rests: Insurance Company *v.* Slockbower, 2 Casey 199.    But
what was the evidence?    The witness called by the plaintiff to
prove the assessment, produced a letter addressed to the agent to
whom the duplicate was addressed, instructing him not to collect
it.    The agent testified that he did make the demand, but on
turning to the duplicate he noticed a memorandum made by him-
self that he was instructed not to collect that sum, and left imme-
diately.    The assessment was not paid.    It would have been
error under these circumstances to have submitted the question to

the jury. It is not every mere spark of evidence which a judge is bound so to submit. There must be enough to raise a reasonable question for decision.

Nor can it be pretended that the tender and payment into court of a sum of money as the loss on the stable was an affirmance of the entire contract. The stable was not included in the second policy of insurance effected with the North American Insurance Company. It could not therefore be said to have been over-insured. It may be that the defendants could have treated the entire contract as void and resisted a recovery for any part. Payment of money into court, when the declaration is on a special contract, admits a contract indeed so as to supersede the necessity of proving it at the trial: 1 Tidd's Practice 625. It is an acknowledgment of the right of action to the amount of the sum brought in; but beyond the amount of that sum it is no acknowledgment of the right whatever: Id. 624. It waives the benefit of no defence, even though such defence be to the whole. It seems therefore that after payment of money into court there may be a nonsuit, a judgment as in case of a nonsuit, a demurrer to evidence or a plea *puis darrien continuance,* in short that the cause goes on substantially in the same manner as if the money had not been paid in at all; in other words the defendant is not precluded by it from taking a defence which goes to the whole cause of action.                                   Judgment affirmed.