LEO A. WATSON, Respondent, *v.* FARMERS CO-OPERATIVE FIRE INSURANCE CO., Appellant.

Fourth Department, May 2, 1956.

420

*John J. Horey* for appellant.

*Edward M. Horey* for respondent.

BASTOW, J. The plaintiff has obtained a judgment in an action to recover the amount claimed due under the provisions of an insurance policy as the result of the destruction by fire on December 1, 1952, of a barn on plaintiff's property in Cattaraugus County.

The policy in question was issued by the defendant on August 17, 1950, for a term ending on September 30, 1953. The original policy was not produced upon the trial. It appeared that in the summer of 1951 plaintiff's residence had been burglarized and a safe containing the policy and other papers had been stolen. It was stipulated, however, that the standard New York fire insurance policy form (Insurance Law, § 168, subd. 6) was used. There was received in evidence a copy, partly printed and partly typewritten, of a so-called " Fire Insurance Schedule Form " the original of which was attached to and made a part of the issued policy.

The policy in question, as thus reconstructed, contained the standard provision that " Other insurance may be prohibited or the amount of insurance may be limited by endorsement attached hereto." (Standard Policy; Insurance Law § 168, subd. 6, p. 2, line 25.) The schedule form contained pertinent information as to the name of the insured, the location of the insured premises and the term of the policy. Also typewritten on the form were statements that $650 insurance attached to a two-story dwelling (item 1) and $4,000 attached to a barn (item 6). Coverage was extended to other items not here material. There was printed on this form the statement " Additional Fire Insurance on real property insured hereunder, is prohibited unless written consent is endorsed hereon." Typewritten in a blank space on the form was the following: " (Total insurance permitted in all companies is; Item #1, $2,000. Item #6, $10,000)."

There is no dispute that when fire destroyed the barn there was a total insurance coverage upon the barn of $15,000. The defendant contends that the additional coverage of $5,000 above the prohibited amount was a violation of the additional insurance provision and was a breach of a condition of the policy that

prevented a recovery. The plaintiff claims that notice of the additional insurance above the prohibited amount was given to the defendant and that the conduct of the company prior and subsequent to the loss constituted a waiver of the provision.

At this point it may be helpful to briefly trace the history of the " other insurance " clauses in the standard New York fire insurance policies. Provision was first made in this State for a standard policy by chapter 488 of the Laws of 1886. This is commonly referred to as the "1887 form " and remained in effect until the 1918 Standard Fire Policy was approved (L. 1917, ch. 440, § 3). This policy contained the provision that " Unless otherwise provided by agreement in writing added hereto this Company shall not be liable for loss or damage occurring (a) while the insured shall have any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy " (4 Richards on Insurance [5th ed.], p. 2007). In 1942 the present policy form was enacted, which made its use compulsory after July 1, 1943. (L. 1942, ch. 900, superseded by L. 1943, ch. 671.) Contained in this form was the provision with which we are here concerned that " Other insurance may be prohibited or the amount of insurance may be limited by endorsement attached hereto."

It thus appears that in the 1918 form additional insurance was prohibited or limited unless consent was indorsed whereas in the present (1943) form the prohibition or limitation must be added to the policy by endorsement. Either of the provisions, however, imposes a condition upon the company's liability under the policy. (*Graham* v. *American Eagle Fire Ins. Co.,* 182 F. 2d 500; *Aetna Ins. Co.* v. *Jeremiah,* 187 F. 2d 95.) In the *Graham* case (*supra,* pp. 501, 502) the court said: " Plaintiffs argue that there is a difference in that the old form of policy expressly excludes liability where there is other insurance, whereas there is no such express exclusion in either the face of the new form of policy or the indorsements which were added in this case. The answer is that this provision of the old policy merely embodies along with the condition against additional insurance the rule which the law would apply upon breach, whether expressed or not, and that the rule is not different because not expressly set forth in the face of the contract. A provision forbidding or limiting additional insurance is clearly intended not as prescribing something to be done by the insured but as expressing a condition upon which the company assumes liability; and the law is well settled that, upon the breach of such a condition, there can be no recovery upon the contract in which it is contained. The principle upon which this conclusion rests

is elementary in the general law of contracts. See A. L. I. Restatements of Contracts secs. 250 and 260, and illustration 1 under 260. Applied in the law of insurance, it clearly requires that a provision forbidding or limiting additional insurance be treated as a condition of the policy, breach of which will preclude recovery by the insured." Upon the trial this principle, in substance, was enunciated as the law of the case and neither party questions it upon this appeal. Therefore, it is here accepted without further exploration.

It is necessary to adequately consider the claims of the parties to briefly review the history of the contractual relations between them. The defendant is a co-operative fire insurance company with a principal place of business in Hornell. Its office staff consists of its secretary-treasurer, who is in charge of the office, and three female employees. The company's business dealings with plaintiff were conducted through its agent, one Stelley, who lived in the general vicinity of plaintiff's farm property. In 1941 the plaintiff first procured fire insurance from the defendant. In 1945 the barn burned and the claimed loss was paid by defendant. In 1946 plaintiff commenced construction of a new barn. Insurance thereon during the course of construction was effected by a series of indorsements to a policy theretofore issued by defendant. The first indorsement gave coverage of $1,000 but limited liability to an amount not to exceed material and labor costs as of the date of loss. In July, 1946, a second indorsement was added increasing the coverage to $3,000 and contained the significant statement that such sum was the " only insurance permitted." A month later the amount was increased to $4,000 with a similar statement as to permissible insurance.

Following the completion of construction of the barn and in August, 1946, the plaintiff procured from another co-operative company further coverage of $3,000 upon the barn. This information was conveyed to defendant's local agent who transmitted it to the defendant's home office by letter stating that " This barn has cost Mr. Watson a little over $10,000 to build, and he wants $7,000 coverage. The other $3,000 with the Grange Company. This will not be over insurance on the basis of cost." The defendant issued an indorsement increasing the permissible amount of insurance on the barn to $7,000. Some six months later plaintiff obtained further coverage of $3,000 by a policy issued by a third company. Again defendant's local agent transmitted this information to the home office and an indorsement was issued permitting total insurance of $10,000. In his letter to defendant the agent stated that " This makes a coverage of $10,000, on barn, which is likely about ⅔ cost of construction."

The policy, to which these indorsements were added, expired in August, 1947. A renewal policy for three years was issued with the limit of permissible insurance on the barn again fixed at $10,000. Three years later the policy under consideration was issued and, as has been stated, it contained a like statement as to permitted insurance.

On July 28, 1952 the Ashford Mutual Fire Insurance Company issued to plaintiff a policy, which, among other things, granted $5,000 additional coverage on the barn for a term of three years. The defendant claims it had no knowledge of this additional increase of total insurance prior to the loss and that the increase of total insurance to $15,000 in the absence of its written consent indorsed on its policy voided the same and relieves it from any liability. The principal evidence adduced upon the trial upon the subject of notice having been given to the defendant of this additional insurance was the testimony of one Pierce, the secretary-treasurer of the Ashford Company. There is no evidence that Stelley, the local agent of defendant, had knowledge of this additional insurance until after the loss. Upon the trial the plaintiff offered proof of such lack of knowledge in the form of a letter of February 4, 1953, from Stelley to the defendant in which it was stated that Stelley first knew of the additional insurance when advised by plaintiff of the loss.

The focal point of evidence, if any, that notice was given to defendant of the additional insurance in the Ashford company is whether or not Pierce, the officer of Ashford, sent a letter conveying such information to defendant. The testimony of Pierce upon this subject is most unsatisfactory. He was unable to produce a copy of such a letter although it was the invariable custom to make and keep a copy of all correspondence. Pierce testified that he " supposed " he had given notice " but I can't find any carbon copy." It was his " best recollection " that he did but " the office girl and I was talking and I told her that we had better notify them, and she didn't do it. If she had, she would have had a copy left." On the other hand plaintiff put in evidence a letter from defendant's secretary to Stelley, its agent, written in February, 1953, from which it appears that neither the Ashford Company nor Pierce had knowledge of the defendant's coverage until after the fire. Pierce's testimony that certain pencil notations appearing on the " farm form " were placed there after the loss was not contradicted.

The problem is thus posed as to whether a question of fact was presented from which a jury might find that the defendant had waived the breach of the condition upon which the company had assumed liability. We think not. Here the course of conduct

between the parties over a period of several years had been invariable. On several occasions the plaintiff had increased the total coverage on the barn beyond the permissible limit. On each occasion application had been made to the defendant and it had taken affirmative action thereon by issuing the requested indorsement. Here, something more was required than " notification " to the company. The insurance contract was required to be modified in one of its important aspects at the instance of the plaintiff or his representative and the necessary written endorsement issued.

In *Armstrong* v. *Agricultural Ins. Co.* (130 N. Y. 560) it appeared that one of the conditions of the policy was that it should be voided if proceedings should be commenced to foreclose any mortgage unless the written consent of the company was obtained. Such action was commenced without consent but subsequently a letter was written asking consent to the continuance of the action. No reply was made to the letter and subsequently the buildings were burned. In denying a recovery the court said (p. 564) that it was " unable to see how under any rule any legal obligation rested upon the defendant to reply or how it could be inferred from the failure to reply that it intended to waive the enforcement of that condition of the policy. The commencement of the suit rendered the policy from that time void. The plaintiff must be presumed to have known of that fact. He deliberately violated the condition and destroyed his contract and then informed the defendant of his act. It would require some affirmative action on defendant's part under such circumstances to indicate that it intended to waive the result of the plaintiff's breach."

And in *Schultze & Co.* v. *Camden Fire Ins. Assn.* (304 N. Y. 143, 147–148) it was said that " there is no proof whatever that, on a date prior to the theft, an authorized agent of the defendant had agreed to transfer insurance coverage from the plaintiff's 1922 Mack truck to the 1930 Mack truck which was stolen. ' A party cannot be held to contract where there is no assent. Silence operates as an assent and creates an estoppel only when it has the effect to mislead. There must be such conduct on the part of the insurer as would, if it were not estopped, operate as a fraud on the party who has taken or neglected to take some action to his own prejudice in reliance upon it.' (*More* v. *New York Bowery Fire Ins. Co.*, [130 N. Y. 537, 545]) ".

Assuming that defendant was notified that additional insurance had been written it is difficult to see how plaintiff could have been misled or put in a false position by the silence of the defendant. He knew, or should have known, both from the

provisions of the policy and his former dealings with the company that receipt of a written endorsement was required to remedy the breach by him of the policy condition. In *Gibson Elec. Co.* v. *Liverpool & London & Globe Ins. Co.* (159 N. Y. 418, 426–427) it was said that " in the absence of an express waiver, at least, some of the elements of an estoppel must exist. The insured must have been misled by some act of the insurer, or it must, after knowledge of the breach, have done something which could only be done by virtue of the policy, or have required something of the assured which he was bound to do only under a valid policy, or have exercised a right which it had only by virtue of such policy. Such an estoppel or waiver must be established by the person claiming it by a preponderance of evidence, and neither an estoppel nor a waiver of the breach of a condition after forefeiture, by reason thereof, can be inferred from mere silence or inaction."

And in *Palma* v. *National Fire Ins. Co.* (240 App. Div. 454, 457) this court said that " Respondents rely on the rule that an insurance company, having knowledge of grounds of forfeiture, owes the duty to declare it, otherwise it is waived. That, as I understand it, is only true where the company through its promise has led the insured to believe that he was protected, as in the *Barone Case* [260 N. Y. 410]; or has accepted a premium after knowledge of the forefeiture; or has required something of the insured which it could only require under the policy and by reason of its terms, as in the case of *Titus* v. *Glens Falls Ins. Co.* (81 N. Y. 410), where the insured was required to appear for examination; or where the insurance company ' recognizes the continued validity of the policy, or does acts based thereon, or requires the insured to do some act or incur some trouble or expense.' (*Armstrong* v. *Agricultural Insurance Co.,* 130 N. Y. 560, 564.) As was said in the *Titus Case* (*supra,* at p. 419): ' A waiver cannot be inferred from its [insurance company's] mere silence.' " (See, also, *Truglio* v. *Zurich Gen. Acc. & Liability Ins. Co.,* 247 N. Y. 423; *Baumgartel* v. *Providence-Washington Ins. Co.,* 136 N. Y. 547; *Allen* v. *German Amer. Ins. Co.,* 123 N. Y. 6 and *Sanders* v. *Cooper,* 115 N. Y. 279.)

The authorities relied upon by respondent (*Pechner* v. *Phœnix Ins. Co.,* 65 N. Y. 195; *Ticonderoga Grange* v. *Clinton Co. N. Y. Patrons Fire Relief Assn.,* 268 App. Div. 374; affd. 294 N. Y. 815; *Fuessler* v. *Chautauqua Co. Patrons' Fire Relief Assn.,* 260 App. Div. 991) point up the distinction. In each of these decisions the defendant or its officers had full knowledge of the facts and took some affirmative action from which a waiver or estoppel could be found. *Ray* v. *Canton Co-op. Fire Ins. Co.*

(18 N. Y. S. 2d 671, affd. 260 App. Div. 961) cited by respondent was reversed (286 N. Y. 405).

We have considered the other facts claimed by plaintiff to have constituted a waiver of the breach of the policy condition and find them insufficient as a matter of law upon which to base the finding implict in the verdict of the jury. The physical inspection of plaintiff's premises by a representative of the defendant in January, 1952, when information was perhaps obtained as to other insurance on the dwelling has no probative force to prove waiver as to additional insurance upon the barn. The report correctly states the amount of insurance on the barn as of that date. Moreover, this inspection took place some six months before the prohibited policy was issued and no information could have been obtained at the time of the inspection that would have pertinency on the problem under consideration. Similarly, the cancellation of the policy some six months after the fire loss has no relevancy. The company was acting within the policy provisions and there was no improper retention of premiums. The notice of cancellation stated, as required by the policy provision, that excess premium if not tendered would be refunded on demand. The policy contains no provision for return of premiums except in the event of cancellation. The entire subject of premiums was improperly injected in the trial and would require a new trial except for the conclusion here reached. There was no competent evidence of waiver by defendant in connection with the proofs of loss. They were verified by plaintiff on December 10, 1952. He neglected for quite apparent reasons to list items of policies written by other companies as required by the proof of loss form. The proofs were returned by the defendant and refiled by plaintiff on January 26, 1953. The loss was payable within sixty days thereafter. Prior to the expiration thereof, defendant notified plaintiff in writing that it declined payment because of the breach of the policy condition relating to other insurance.

In our view of this record there is a lack of proof by the plaintiff sufficient in law to support the allegations of the complaint that the issuance of additional fire insurance beyond the permitted amount was made known to the defendant and that it waived the prohibition against insurance on the structure in excess of $10,000. In commenting on the policy provision under consideration it has been written that " Because of the natural tendency to exercise a lesser degree of care in preventing a fire or taking steps to minimize its danger where the property is indemnified against destruction up to its full value, some provision against over-insurance was necessary. Even though

recovery could not exceed the actual value of the property, the temptation to convert property into ready cash without suffering any loss can easily be appreciated. Recovery on several policies might often net the insured a profit.'' (See 1943 Standard Fire Insurance Policy, 39 Illinois L. Rev. 66, 79; see, also, 37 Col. L. Rev. 410; 42 Col. L. Rev. 1227 and *Bigler* v. *New York Central Ins. Co.*, 22 N. Y. 402, 404.) Here the documentary evidence offered by the plaintiff shows that when the permitted insurance had been increased to $10,000 the defendant was informed that '' this makes a coverage of $10,000, on barn, which is likely about $\frac{2}{3}$ cost of construction.'' While proof was received upon the trial that the 1952 reproduction cost of the barn was in excess of $20,000 there is no proof that defendant had knowledge that permitted insurance of $15,000 would not represent over-insurance on the structure.

The judgment and order appealed from should be reversed on the law, without costs, and the complaint dismissed.

All concur. Present — McCurn, P. J., Vaughan, Kimball, Wheeler and Bastow, JJ.

Judgment and order reversed on the law, without costs of this appeal to either party, and complaint dismissed, without costs.