NATIONAL UNION FIRE INSURANCE COMPANY et al., Appellant,

v.

Dan HENDRIX, Appellee.

Court of Appeals of Kentucky.

May 20, 1960.

Rehearing Denied Sept. 30, 1960.

Stoll, Keenon & Park, John L. Davis, Lexington, Pat Rankin, Stanford, for appellant.

John Y. Brown, Lexington, for appellee.

MOREMEN, Judge.

The appellee, Dan Hendrix, operated a general store in Lincoln County. The appellants are fire insurance companies who issued various policies of fire insurance covering the merchandise and fixtures. There is no controversy concerning that part of the policies which covered the fixtures and we will concern ourselves only with insurance coverage for the stock of merchandise.

On December 18, 1956, appellee obtained fire insurance policies through the Pence-Gilliland Agency of Stanford which insured against loss of his merchandise by fire in the total amount of $11,000. To these policies was annexed an endorsement limiting the total insurance to $11,000.

On January 2, 1957, appellee purchased a policy of insurance through the Foster & Foster Agency of Stanford covering merchandise in the amount of $7,500. The policy had an endorsement limiting the total insurance on merchandise to $7,500.

On February 15, 1957, the general store, the stock of merchandise and the fixtures were destroyed by fire.

Appellants took the position that appellee had violated a material provision of the insurance policy when he obtained insurance beyond the limitation for total insurance, and refused payment.

Appellee brought suit on the policies and after a trial before the court and jury it was adjudged that each of the defendant insurance companies was liable to appellee in that proportionate amount of its policy which the specified limit fixed in the policy bore to the aggregate amount of insurance. The jury fixed the amount of loss at $12,500.

In each of the policies is this provision:

"Other insurance may be prohibited or the amount of the insurance may be limited by endorsement attached hereto."

To each policy was annexed this endorsement:

"Permission for other insurance given by this policy is hereby limited so that the total amount of insurance

permitted, including this policy, shall in no case be in excess of the following stipulated amounts, which are permitted whether or not permission for other insurance is given elsewhere in this policy."

As stated above, the endorsement on the Pence-Gilliland policies limited the total insurance on merchandise to $11,000, and that on the Foster & Foster policy to $7,500.

We learn from the opinion of the trial court that all the policies were written on the form of the New York Standard Fire Insurance Policy which was enacted in 1942 and became effective in 1943, and that the clause with which we are concerned has been subject to several changes.

In the first enactment in the year 1886, the clause was in this form:

"This entire policy, unless otherwise provided by an agreement endorsed hereon or added hereto shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."

in 1918 the form was changed to read:

"Unless otherwise provided by agreement in writing added hereto this Company shall not be liable for loss or damage occurring while the insured shall have any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."

The trial court stated that under the older forms of the New York Standard Fire Policy this court had held that a violation of the clause, by obtaining other insurance, would forfeit the policy. Northwestern Nat. Ins. Co. of Milwaukee v. Avant, 132 Ky. 106, 116 S.W. 274; Hurst Home Ins. Co. v. Deatley, 175 Ky. 728, 194 S.W. 910, L.R.A.1917E, 750; and Continental Ins. Co. v. Riggs, 277 Ky. 361, 126 S.W.2d 853, 121

A.L.R. 1421. He remarked, however, that while the 1918 revision changed the wording somewhat, the wording as changed—just as unequivocally as that in the 1886 form—provided that unauthorized additional insurance would forfeit the insurance. He pointed out that in the 1943 form there was a definite change in the wording, and concluded that the words *prohibited* and *limited,* as used in the provision, were not of equivalent meaning, saying:

"Going back to the 1943 policy provision, it seems to me that its phraseology is strongly persausive that it gives to the company the option, through the endorsement, of providing for the effect of other insurance, so as to make it either a bar to any recovery or simply a limitation on the amount recoverable. The contrasting nature of the two phrases of this provision, one that *other insurance may be prohibited,* the other that *the amount of the insurance may be limited,* is shown, as I see it, not only by the difference in the meaning of the two key words, *prohibited* and *limited,* but also by the connective used, the disjunctive *or,* thus manifesting that the two phrases are in the alternative, with the choice to the company of whether by its endorsement to *prohibit* or *limit.* As previously shown, words of an insurance policy are to be taken as meaning what persons of usual and ordinary understanding would take them to mean in the context in which used. While it hardly requires recourse to the dictionary to know their meaning, Webster's New International Dictionary defines the verb *prohibit* as meaning to hinder, debar, forbid; to interdict, prevent; it defines the verb *limit* as having the meaning of to assign to or within certain limits; to fix, constitue, or appoint definitely; to allot; to apply a limit to or bounds for; to terminate or restrict by a limit or limits. Obviously, then, the words *prohibit* and

*limit* are not equivalent in meaning, and this provision should be construed not as if they were synonymous, but in such manner as to give effect to the meaning of each.

"In the context, and bearing in mind that the right *to prohibit* connotes authority to bar absolutely, I think the fair and reasonable interpretation of this provision is that it gives to the company the choice of so endorsing the policy as to bar any recovery, in event of other insurance, or of simply limiting the amount of recovery, in such event."

He concluded, that in view of the fact the company, by endorsement, had not provided that other insurance was prohibited, but that "permission for other insurance is hereby limited," the company chose only to limit the recovery and not to bar it completely. As stated above, the judgment apportioned the amount of loss between the companies in that proportion which the specified limits fixed in the policies bore to the aggregate amount of insurance.

The lucid opinion of the trial court is the only one we have found or which has been cited that reaches the same conclusion. The other opinions exactly in point are from other jurisdictions. In this state, however, we have often held that insurance contracts limiting the amount of insurance which may be carried are reasonable and therefore valid. Roberts v. London & Lancanshire Ins. Co., 282 Ky. 679, 139 S.W.2d 764, and cases therein cited.

While the Roberts case does not deal with the 1943 form of the New York Standard Insurance Policy, we think the language used is reasonably close to that used in the policies under consideration and that it has some authority. In that case the printed form policy prohibited any additional insurance on the property unless it was otherwise provided by agreement added to the policy. Such a rider was attached to the policy. It read in part:

"'Other insurance permitted on items covering on buildings, but the total amount of insurance permitted (including this policy) shall in no case be in excess of the following stipulated amounts: Item No. 1. $1500, Item No. 2 $1500.'"

The court said:

"It plainly stated that the *total* amount of insurance permitted (including this policy) shall in no case be in excess of $1,500 on each item. Appellant not only fails to deny but expressly admits that at the time the fire occurred he had insurance on the building and its contents in the aggregate sum of $6,000, which was $3,000 more than the sum permitted under the contract sued on. He merely relies on the alleged ambiguity contained in the rider, wherein 'other insurance' is permitted, but fails to recognize language equally as clear that in no event the total amount of insurance, including all policies, shall not exceed $1,500 on each item or a total of $3,000."

The court refused recovery apparently on the ground that the limitation against additional insurance was a continuing warranty and a condition which must be kept and met before any recovery may be had under the terms of the policy.

The leading case on the serious question we have before us is Graham v. American Eagle Fire Insurance Company, 182 F.2d 500, 501. It was decided in 1950 by the U. S. Court of Appeals, 4th Circuit. The opinion was written by Chief Judge John Parker. It was said:

"There would be no question as to the effect of additional insurance under the provisions of the old New York Standard Fire Policy which expressly stipulated that the company should not be liable for loss or damage occurring while the insured had any other contract of insurance on the property covered unless consent in writing was en-

dorsed on the policy. We think that the result is not different where the prohibition or limitation upon the taking of additional insurance is indorsed upon the policy in accordance with the provision of the new form. In the old form, additional insurance was prohibited or limited unless consent was indorsed; in the new form, the prohibition or limitation must be added to the policy by indorsement. In either case, however, the prohibition or limitation imposes, we think, a condition upon the company's liability under the policy.

"Plaintiffs argue that there is a difference in that the old form of policy expressly excludes liability where there is other insurance, whereas there is no such express exclusion in either the face of the new form of policy or the indorsements which were added in this case. The answer is that this provision of the old policy merely embodies along with the condition against additional insurance the rule which the law would apply upon breach, whether expressed or not, and that the rule is not different because not expressly set forth in the face of the contract. A provision forbidding or limiting additional insurance is clearly intended not as prescribing something to be done by the insured but as expressing a condition upon which the company assumes liability; and the law is well settled that, upon the breach of such a condition, there can be no recovery upon the contract in which it is contained. The principle upon which this conclusion rests is elementary in the general law of contracts. See A. L.I. Restatements of Contracts secs. 250 and 260, and illustration 1 under 260. Applied in the law of insurance, it clearly requires that a provision forbidding or limiting additional insurance be treated as a condition of the policy, breach of which will preclude recovery by the insured. See Kossmehl v. Miller National Insurance Co., 238 Mo.App.

671, 185 S.W.2d 293; Plumley v. Superior Fire Ins. Co., 122 W.Va. 333, 9 S.E.2d 229; Roberts v. London & Lancanshire Ins. Co., 282 Ky. 679, 139 S. W.2d 764; Elliott v. Lycoming County Mut. Ins. Co., 66 Pa. 22, 5 Am.Rep. 323; Mitchell v. Lycoming County Mut. Ins. Co., 51 Pa. 402."

In Aetna Ins. Co. of Hartford, Conn. v. Jeremiah, 10 Cir., 187 F.2d 95, the court said that such provisions are promissory warranties and as they apply to insurance contracts require that something be done or not done by the insured after the policy takes effect, and a breach of which avoids liability on the policy. The court quoted language from and accepted the logic of the opinion in the Graham case.

The Graham case was relied upon in Flowers v. American Ins. Co., 223 Miss. 732, 78 So.2d 886, and Hunter v. United States Fidelity & Guaranty Co., Fla., 86 So.2d 421, 424, where it was observed: "In the instant case the contracts were clear and unambiguous, and the assured agreed that he would take out no additional insurance. It was on this condition that the insured assumed the responsibility of the insurance." In Hiatt v. American Insurance Co., 250 N.C. 553, 109 S.E.2d 185, the Supreme Court of North Carolina followed the opinion in the Graham case when interpreting, for the first time, the new form of the Standard Fire Insurance Policy. See Watson v. Farmers Co-operative Fire Insurance Co., 1 A.D.2d 419, 151 N. Y.S.2d 321.

The Court of Civil Appeals of Texas in Kelley v. American Insurance Company, 316 S.W.2d 452, 454, under similar facts and provisions where the policies were in "standard Texas policy form," reached a contrary view from other cases in this country and the Supreme Court of Texas in American Insurance Company v. A. J. Kelley, 325 S.W.2d 370 affirmed the judgment of the Civil Court of Appeals. It concluded that where the first standard form fire policy was in effect when insured

obtained second standard form fire policy from another insurer, the second policy was unenforceable, and therefore the first policy continued to be valid and enforceable. Three of the justices dissented on the ground that the case of Graham v. American Eagle Fire Insurance Company should be followed. We believe the dissenting opinion is more persuasive.

We have concluded that the reasoning in the Graham case is sound and that we will accept the rule which the great majority of the courts of this country have found to be satisfactory.

The judgment is therefore reversed.