STILLMAN B. WALKER et al., Appellants, *v.* THE PHŒNIX INSURANCE COMPANY of Hartford, Conn., Respondent.

1. FIRE INSURANCE — CHATTEL MORTGAGE — WAIVER OF FORFEITURE. If after having made, in ignorance of the existence of a chattel mortgage, a contract of fire insurance voidable for that reason, the company learns of the existence of the mortgage and thereafter treats the policy as valid, or puts the insured to trouble or expense on account thereof, its acts are evidence from which a jury may find a waiver of the forfeiture.

2. FACTS TENDING TO ESTABLISH WAIVER — QUESTION FOR JURY. The facts that an insurance company, after learning of the existence of a chattel mortgage on insured property and of a loss, changed the policy, at the request of the insured, by correcting the spelling of his name, gave assurance that the loss would be paid, required the insured to furnish an inventory for the purpose of an adjustment, which was entered upon, and then requested payment of the premium, furnish, in the absence of explanation by the company, some evidence for the jury, of a waiver of forfeiture.

*Walker* v. *Phœnix Ins. Co.*, 89 Hun, 333, reversed.

(Argued June 10, 1898; decided October 4, 1898.)

APPEAL from a judgment of the late General Term of the Supreme Court in the first judicial department, entered November 13, 1895, affirming a judgment in favor of defendant, entered upon a verdict directed by the court.

This was an action upon a New York standard fire insurance policy to recover for a loss by fire. The facts, so far as material, are stated in the opinion.

*George W. Stephens* for appellants. The waiver of a condition rendering a policy void, when such condition existed at the time of its issuance, may be by parol, or by any act on the part of the insurers indicating an intention on their part not to insist upon it. (*Van Schoick* v. *N. F. Ins. Co.*, 68 N. Y. 434; *Whited* v. *Ger. F. Ins. Co.*, 76 N. Y. 415; *Woodruff* v. *I. F. Ins. Co.*, 83 N. Y. 134; *Short* v. *H. Ins. Co.*, 90 N. Y. 16; *McNally* v. *P. Ins. Co.*, 137 N. Y. 389; *Carpenter* v. *Ger. A. Ins. Co.*, 135 N. Y. 298; *Cross* v. *Nat. F. Ins. Co.*, 132 N. Y. 133; *Berry* v. *Am. C. Ins. Co.*, 132 N. Y. 49;

*Armstrong* v. *Agr. Ins. Co.*, 130 N. Y. 564; *Robbins* v. *S. F. & M. Ins. Co.*, 79 Hun, 117; *Kiernan* v. *D. Co. M. Ins. Co.*, 150 N .Y. 190, 198; *Ronald* v. *M. R. F. L. Assn.*, 132 N. Y. 378; 2 Biddle on Ins. 1052, 1053; *Trippe* v. *P. F. Soc.*, 140 N. Y. 23; *Benninghoff* v. *Agr. Ins. Co.*, 93 N. Y. 495; *Brink* v. *H. F. Ins. Co.*, 80 N. Y. 108; Clements' Dig. Insurance Law, 624, par. 6; 2 May on Insurance, 504a.)   It was not necessary that the waiver should be noted on the policy. (*Titus* v. *G. F. Ins. Co.*, 81 N. Y. 410; *Berry* v. *Am. C. Ins. Co.*, 132 N. Y. 49.)   The plaintiffs fully established their right to recover. (*Hathaway* v. *O. Ins. Co.*, 11 N. Y. Supp. 413; 134 N. Y. 409.)

*Dallas Flannagan* for respondent.   The subject of the insurance having been incumbered by a chattel mortgage, the policy was, by its express terms, thereby voided, and this action upon it can, therefore, not be maintained.   There was no waiver of this condition. (*Walsh* v. *H. F. Ins. Co.*, 73 N. Y. 5.)

VANN, J.   On the 11th of November, 1890, the firm of Saunderson & Starkweather, through their broker, named Clark, applied to the defendant for insurance upon some printing machinery and materials, which were at the time subject to two chattel mortgages, but this fact was not then disclosed to the company.   Each mortgage contained a covenant on the part of the mortgagors to keep the property insured for the benefit of the mortgagees, who are the plaintiffs in this action, and to assign the policy to them.   Said application was made at the main office of the defendant to one Haslock, the "application clerk," who passed upon substantially all applications, fixed the rate, and ordinarily took the risk and bound the company, as well as gave permits for change of ownership and the like.   Mr. Haslock thereupon signed and delivered what is known as a "binder," a brief instrument, whereby the defendant insured Saunderson & Starkweather against loss by fire upon said property to the amount of

$1,000, "subject to the conditions of" its "several policies."
The next day the property insured was injured by fire, but a
policy of the standard form, covering the same risk as the
binder, was at once issued and delivered to the broker who.
had made the application for insurance.   On November 13th,
the day after the fire, the broker discovered that the name of
one member of the firm insured was misspelled in the policy;
so he took it to the same office of the defendant, where he
again saw Mr. Haslock; told him about the fire; stated that
the property insured was incumbered by chattel mortgage,
and requested him to correct the spelling in the name, and to
insert the usual "mortgage clause."   In answer to this request,
as Mr. Clark stated on his direct examination, Mr. Haslock
"said that he could change the word Starkweather, but that
he could not change the mortgage note or put it on, or, rather,
he could not change it because it was not on; that he could
not put the mortgage note on.   I said, how will that affect in
the case of the fire?   He said it would make no difference, as
the loss would be settled with Saunderson & Starkweather
and a check paid to their order."   Mr. Clark thereupon asked
Mr. Haslock to give notice when he drew the check to the
order of Saunderson & Starkweather, so that the plaintiffs
could be present at the time the check was paid to them and
get the amount of their claim therefrom, but it does not appear
that any answer was made to this request.   Upon his cross-
examination, Mr. Clark described the interview, after making
the request for said changes, as follows: Mr. Haslock "said
he could not do it at that time, as the fire had occurred, but
he could change the name of Starkweather, and, regarding all
losses, it would make no difference in their payments, as they
would draw their check to the order of Saunderson & Stark-
weather, and   *   *   *   Walker & Bresnan could look to
Saunderson & Starkweather for their money.   I then asked
the gentleman if he would not hold his check when he paid
the loss, and let me know, that I might have Bresnan &
Walker there when the check was paid either to Mr. Saun-
derson or Mr. Starkweather."   Mr. Haslock denied that he

said a check would be given for the loss, but admitted saying,
" We settled with the insured only ; it makes no difference
and it is out of my hands." While this conversation was
going on, Mr. Haslock corrected the misspelled name, and
soon after handed the policy thus corrected to the broker,
who was acting for the owners of the property. Haslock
also testified that he reported the existence of the mortgages
to Mr. McKay, the manager of the company, but could not
say whether it was before any steps had been taken to adjust
the loss. He was, however, in the same office as the manager
and in constant communication with him. On the 13th of
November Mr. McKay appointed as adjuster for the com-
pany, one Watlington, who at once conferred with Mr. Saun-
derson and told him that when his statement of the property
insured was ready he would be prepared to ascertain and fix
the amount of loss with him. Mr. Saunderson prepared an
itemized statement of the property, as required by the policy,
embracing many items, with descriptions and values, and on
the 18th of November delivered it to Mr. Watlington, who, a
day or two later, negotiated with Mr. Saunderson "and his
adjuster" at the scene of the fire, examined the property in
connection with the schedule furnished and said they had
better have the amount of the loss ascertained by appraisers.
Prior to this time no mention had been made of an appraisal
on either side. Thereupon appraisers were selected, an
appraisal had, an award made and brought to the office of the
company. Proofs of loss on the basis of the appraisal were
made by the insured and delivered to the defendant about the
29th of November and no objection was made as to their form
or sufficiency. On the 8th of December Mr. Clark's firm
tendered a check to the defendant for the premium on the
policy, but the company refused to receive it. On the 20th
of January following the defendant sent to Mr. Clark's firm
a formal bill for $45.00, of which $30.00 was for the premium
on the policy in question and the remainder on another policy,
with a request to remit for the same. No remittance appears
to have been made, nor was any reason given by the company

for sending said bill, and although it is now claimed by its counsel to have been sent inadvertently, there is no evidence in the record to that effect. After all the rights of the insured had been duly assigned to the plaintiffs, an action was brought by them upon the policy for the amount of the loss, which was less than the amount of the insurance. Upon the trial the foregoing facts appeared, and at the close of the evidence the court directed a verdict in favor of the defendant and the plaintiffs duly excepted. From the judgment of affirmance rendered by the General Term the plaintiff appealed to this court.

The policy provided that it should be void " if the interest of the insured be other than unconditional and sole ownership; * * * or if the subject of insurance be personal property and be or become encumbered by a chattel mortgage. * * * If fire occur the insured shall * * * separate the damaged and undamaged personal property, put it in the best possible order, make a complete inventory of the same, stating the quantity and cost of each article and the amount claimed thereon. * * * This company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement, act or proceeding on its part relating to the appraisal. * * * "

As the defendant did not know of the existence of the chattel mortgages when the insurance contract was made, the mortgage clause above quoted rendered it voidable at the election of the defendant. If, however, the company, after learning the facts, treated the policy as valid, or put the insured to trouble and expense on account thereof, it was evidence from which the jury might have found a waiver of the forfeiture caused by the existence of the mortgages. Thus, as was said in *Armstrong* v. *Agricultural Insurance Company* (130 N. Y. 564), " The rule is now established * * * that if in any negotiations or transactions with the assured after knowledge of the forfeiture, it recognizes the continued validity of the policy, or does acts based thereon, or requires the insured to do some act or incur some trouble or expense, the forfeiture

is waived. (*Titus* v. *Glens Falls Ins. Co.*, 81 N. Y. 410; *Roby* v. *American Central Ins. Co.*, 120 N. Y. 510; *Pratt* v. *Dwelling House Mutual Ins. Co.*, 41 N. Y. S. R. 303.)"

And more recently, referring to the same subject in *Kiernan* v. *Dutchess Co. Mutual Ins. Co.* (150 N. Y. 190, 195), this court said : "While express waiver rests upon intention, and estoppel upon misleading conduct, implied waiver may rest upon either, for it exists when there is an intention to waive unexpressed, but clearly to be inferred from circumstances, or when there is no such intention in fact, but the conduct of the insurer has misled the insured into acting on a reasonable belief that the company has waived some provision of the policy. (*Ronald* v. *Mutual R. F. Life Assn.*, 132 N. Y. 378; *Armstrong* v. *Agricultural Ins. Co.*, 130 N. Y. 560; 2 Biddle on Insurance, § 1052.) While the principle may not be easily classified, it is well established that if the words and acts of the insurer reasonably justify the conclusion that with full knowledge of all the facts it intended to ' abandon or not to insist upon the particular defense afterward relied upon,' a verdict or finding to that effect establishes a waiver, which, if it once exists, can never be revoked. (*Trippe* v. *Provident Fund Society*, 140 N. Y. 23; *Benninghoff* v. *Agricultural Ins. Co.*, 93 N. Y. 495; *Brink* v. *Hanover Fire Ins. Co.*, 80 N. Y. 108; Clements' Dig. Ins. Law, 624, § 6; 2 May on Insurance, 504a; 2 Biddle on Insurance, 1053.)" The authorities are too numerous and the principle too well settled to require further argument or citation.

Assuming that whatever was said or done between the representative of the insurance company and the owner of the property which related solely to an appraisal is not to be regarded as evidence of waiver, owing to the' provision in the policy relating to that subject, the question presented for decision is whether there was enough other evidence from which the jury might have found a waiver by the company. When Mr. Clark applied to Mr. Haslock to change the policy the latter stood for the company, and whatever he did it did. He changed the policy, not in an important respect, to be sure,

but still by making any change at all did he not recognize the policy as an existing contract, and show an intention not to insist upon the forfeiture ?   If he regarded the policy as void why should he have made the change?   What object was there in changing a contract that could not be enforced against the company ?   Why should any alteration be made in a void instrument ?   Even a clerical change, made by one party to a written agreement at the request of the other, is some evidence of a recognition of the validity of the instrument, because otherwise there would be no reason for making any change.   The party who alters a writing entered into between himself and another, at the latter's request, necessarily treats that writing as an existing instrument and invites the other party to act on it as such.   The nature or extent of the alteration is not important provided there is an intention to alter something that is still in force and which is regarded as still binding.   It cannot be presumed that the company meant to to do nothing, or to do a meaningless act, when at its chief place of business, acting through an agent possessing general authority, it deliberately altered its written obligation so as to make it conform to the original intention of the parties.   A reasonable man does not ordinarily change a void contract at the request of the other party thereto, unless he wishes to revive, continue or treat it as valid.   If he wished to treat it as a nullity one would expect him to decline because it was a nullity.   If the company meant nothing in making the alteration why did it make it?   The change made called for an explanation of the motive in making it, and whether the explanation, which rested simply upon inference, was satisfactory or not was a question for the jury to determine.

The company not only made the change, but through Mr. Haslock said, in substance, that the policy would be paid notwithstanding the existence of the chattel mortgages and the occurrence of the fire.   While he refused to make the policy payable to the mortgagees, he did not put his refusal on the ground that the policy was void, but, as the jury might have found, on the ground, that after the fire had occurred he could

not change the persons to whom the payment was to be made
which might subject the company to a double liability. Thus,
at a time when the company, if it intended to take advantage
of the forfeiture, should have said so, it not only failed to say
so, but changed the policy and said that it would be paid·
This was followed by the appointment of an adjuster who
requested in behalf of the company, as the policy permitted,
that an inventory of the property injured should be made by
the insured, not for the purpose of an appraisal, for none had
yet been suggested and no difference of opinion as to value
had arisen, but for the purpose of an adjustment. The state-
ment or inventory thus called for was required by the policy
to be complete and to set forth the quantity, cost and value of
each article. The defendant thus put the insured to trouble
and expense by requiring him to comply with the terms of
the contract to this extent and thus enforced it *pro tanto* upon
its part. After this schedule had been furnished negotiations
for the express purpose of adjusting the loss were entered into
between the representative of the company and the insured
and finally the company sent a bill for the premium.

We think that under the authorities the evidence thus
alluded to was for the consideration of the jury. While they
might have found in favor of the defendant, if the case had
been submitted to them for decision, there was some evidence
which would have enabled them to find a waiver by the com-
pany. It is not necessary that the company should say, in
terms, through its officers or agents, that it waives a forfeiture,
but it is sufficient if what it says and does would induce a
reasonable man to believe that it did not intend to treat the
policy as void. The acts stated are utterly inconsistent with
such an intention. When not only a change was made in the
policy, but an assurance was given that it would be paid, and
the insured were required to furnish an inventory for the pur-
pose of an adjustment, which was entered upon, and finally a
request made for the payment of the premium, and no explana-
tion of these facts was furnished by the company, we think it
was the duty of the learned trial judge to submit the case to

the jury.   While it may be that some officers or agents of the defendant acted in ignorance of what the others had done, this does not affect the question.   If the company intended to treat the policy as a valid instrument, upon three different occasions, through at least two different agents, they furnished some evidence of waiver which presented a question of fact.

Without further comment, we think the judgment should be reversed and a new trial ordered, with costs to abide the event.

All concur, except Parker, Ch. J., not sitting.

Judgment reversed, etc.