GIBSON ELECTRIC COMPANY, Appellant, *v.* THE LIVERPOOL AND LONDON AND GLOBE INSURANCE COMPANY, Respondent.

1. FIRE INSURANCE — ESTOPPEL AND WAIVER OF FORFEITURE.   While an insurer, even under the provisions of a standard fire policy, may estop itself from claiming, or may waive, a forfeiture under its conditions by its acts and the requirements it makes of the insured after knowledge, still, the circumstances and acts which are required to constitute such an estoppel or waiver seem to be quite firmly established.

2. ELEMENTS OF ESTOPPEL ESSENTIAL TO IMPLIED WAIVER.   In the absence of an express waiver, at least, some of the elements of an estoppel must exist: the insured must have been misled by some act of the insurer, or it must, after knowledge of the breach, have done something which could only be done by virtue of the policy, or have required something of the insured that he was bound to do only under a valid policy, or have exercised a right which it had only by virtue of such policy.

3. PROOF OF ESTOPPEL OR WAIVER.   Such an estoppel or waiver must be established by the person claiming it by a preponderance of evidence; and neither an estoppel nor a waiver of the breach of a condition after forfeiture, by reason thereof, can be inferred from mere silence or inaction.

4. BREACH OF POLICY BY COMMENCEMENT OF FORECLOSURE — WAIVER OF FORFEITURE NOT ESTABLISHED BY CONTINUANCE OF APPRAISAL.   Neither an estoppel nor a waiver of forfeiture, under a standard fire policy containing a provision that it should be void if foreclosure proceedings were commenced against any property covered thereby, is established, where the proof is to the effect that, while the appraisal of a loss under the policy was in progress, the insurer learned that an action for the foreclosure of a mortgage upon the insured premises had been commenced before the loss; that for a month after learning that fact, and until the receipt of the proofs of loss, the insurer remained silent and inactive; that although the appraisal continued, the insurer did nothing as to its continuance, and whatever was done therein by the insured was voluntary; and that on receipt of the proofs of loss the insurer immediately notified the insured that the policy had been forfeited and was void, and thereafter did nothing inconsistent with that claim.

*Gibson El. Co.* v. *L. & L. & G. Ins. Co.,* 10 App. Div. 325, affirmed.

(Argued May 5, 1899; decided June 6, 1899.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 29, 1896, affirming a judgment of the trial court which dismissed the plaintiff's complaint upon the merits.

The nature of the action and the facts, so far as material, are stated in the opinion.

*A. B. Gardenier* for appellant.   The acts of the defendant in proceeding with the adjustment of the loss, after knowledge of the forfeiture, waived the forfeiture.   (*Titus* v. *G. F. Ins. Co.*, 81 N. Y. 410; *Weed* v. *L. & L. F. Ins. Co.*, 116 N. Y. 106; *Roby* v. *A. C. Ins. Co.*, 120 N. Y. 510; *Armstrong* v. *A. Ins. Co.*, 130 N. Y. 560; *McNally* v. *P. Ins. Co.*, 137 N. Y. 389; *Bishop* v. *A. Ins. Co.*, 130 N. Y. 489; *Quinlan* v. *P. W. Ins. Co.*, 133 N. Y. 356; *Kiernan* v. *D. C. M. Ins. Co.*, 150 N. Y. 190; *Sergeant* v. *L. & L. & G. Ins. Co.*, 155 N. Y. 349; *Walker* v. *P. Ins. Co.*, 156 N. Y. 628.)

*John Notman* for respondent.   There was a complete violation of the condition of the policy proved by the undisputed facts, establishing that the foreclosure proceedings were commenced after the issuance of the policy on the property covered thereby, with the knowledge of the insured, and that the judgments of foreclosure and sale were entered before the happening of the fire.   (*Moore* v. *H. Ins. Co.*, 141 N. Y. 219; *Quinlan* v. *P. W. Ins. Co.*, 133 N. Y. 356; *Armstrong* v. *A. Ins. Co.*, 130 N. Y. 560; *Allen* v. *G. A. Ins. Co.*, 123 N. Y. 6; *Messelback* v. *Norman*, 122 N. Y. 583; *Brown* v. *P. Ins. Co.*, 134 N. Y. 28; *Lett* v. *G. Ins. Co.*, 125 N. Y. 82; *Smith* v. *A. Ins. Co.*, 118 N. Y. 526; *Knowles* v. *A. Ins. Co.*, 66 Hun, 220; *Schuster* v. *D. C. Ins. Co.*, 102 N. Y. 260.) There is no waiver of this foreclosure provision or condition of the policy on behalf of the defendant insurance company. (*Armstrong* v. *A. Ins. Co.*, 130 N. Y. 560; *Quinlan* v. *P. W. Ins. Co.*, 133 N. Y. 356; *Moore* v. *H. Ins. Co.*, 141 N. Y. 219; *Baumgartel* v. *P. W. Ins. Co.*, 136 N. Y. 547.)

Martin, J.   This action was upon a standard policy of fire insurance whereby the defendant insured the plaintiff's buildings, engines, machinery, goods and other property described therein for the period of one year from November 23, 1890.

Among others, the policy contained provisions to the effect that the company should not be liable beyond the actual cash value of the property insured at the time any loss or damage should occur ; that the loss or damage should be ascertained or estimated according to such actual cash value ; that such ascertainment or estimate should be made by the insured and the defendant, or, if they differed, by appraisers, as therein provided, and that the entire policy, unless otherwise provided by agreement indorsed thereon or added thereto, should be void if, with the knowledge of the insured, foreclosure proceedings were commenced or notice was given of the sale of any property covered by the policy, by virtue of any mortgage or trust deed.

The policy also included the usual provisions requiring all the property remaining after the fire to be exhibited ; that the assured should submit to examination under oath, and produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof, and that when there was a disagreement as to the amount of any loss it should be ascertained by two competent and disinterested appraisers, each party to select one, the two chosen to select a competent and disinterested umpire, the award of any two to determine the loss, and the parties to pay the appraiser respectively selected by them and to bear equally the expenses of the appraisal and umpire.   It also provided that the company should not be held to have waived any provision or condition of the policy, or any forfeiture thereof, by any requirement, act or proceeding on its part relating to the appraisal or to any examination therein provided for.

When the policy was issued, the premises were incumbered by a mortgage held by Job R. Furman, who, upon his refusal to join as plaintiff, was made a defendant in this action.   On the fourteenth of April, 1891, Furman commenced an action to foreclose his mortgage, which was prosecuted to judgment, and upon the thirty-first day of October the property was advertised for sale.   That judgment was, however, subsequently set aside, a trial was had, and a final judgment entered dismissing

the complaint in that action. But subsequently, and in July, 1892, a second action was brought, which resulted in a judgment foreclosing the mortgage and directing a sale of the property. A sale was had on December 3, 1892, and the sum realized being insufficient to pay the amount due upon the mortgage, a judgment for the deficiency was entered December 28, 1892.

Upon the occurrence of the fire, notice was promptly given to the defendant, and soon after an agreement for submission to appraisers of the amount of the plaintiff's loss was executed by the parties and appraisers were appointed. At that time the defendant had no notice of the action to foreclose the mortgage, and received none until the fourth of November, 1891. It was then notified by the attorneys for the defendant Furman, to whom the defendant wrote on the next day: " The entire matter is now in the hands of our adjuster, who will give the same due attention in accordance with the terms and provisions of the policy." When the company ascertained that an action of foreclosure had been commenced, the adjustment of the loss by the appraisers was still pending and was not concluded until a month afterwards. The record discloses that during the time the appraisal was in progress, the defendant examined the plaintiff's books, bills and vouchers, and that the plaintiff's president was required to and did incur some expenses in the conduct of the appraisal and subsequently paid one of the appraisers thirty-five dollars. It does not, however, clearly appear whether the examination of the plaintiff's books or the acts performed by the plaintiff's president were after or before the time when the defendant learned of the foreclosure action.

Upon the sixteenth of December, when the appraisal was concluded and the award made, the plaintiff executed and delivered to the defendant proofs of loss which were retained by it. Upon the next day it acknowledged receipt of the proofs, and seems to have claimed that the policy was void. All we have found in the record to show what the company did when the proofs of loss were received is contained in the

evidence of the witness Gibson, who testified to having received a letter from the defendant on December seventeenth acknowledging the receipt of the proofs of loss and making the comment that the policy was void. The record discloses that while the defendant became aware of the pendency of the foreclosure action on the fourth of November and the proceedings before the appraisers were not concluded until the fourth of the following December, yet it made no objections to the award or to the continuance of the appraisal, nor did it in any way claim to the plaintiff that it was not liable upon the policy until after the sixteenth of that month, when the proofs of loss were served.

The trial court dismissed the complaint upon the ground that the policy was void by reason of the commencement of the action to foreclose the mortgage upon the premises. The Appellate Division affirmed the judgment of the trial court upon the same ground, and also held that the omission of the insurance company to disaffirm the adjustment after knowledge of the forfeiture of the policy did not constitute a waiver of such forfeiture. This was based upon the provision in the policy that the company should not be held to have waived any condition or forfeiture by any requirement, act or proceeding on its part relating to the appraisal or to the examination provided for, and also upon the ground that the appraisal agreement contained a provision that such appointment and submission were without reference to any other questions or matters of difference within the terms and conditions of insurance, and were of binding effect only so far as the actual cash value of the loss and damage to the property was concerned. It also decided that the facts relied upon to show a waiver by the defendant, which consisted of trouble and expense connected with the appraisal, the furnishing of proofs of loss, the examination of the plaintiff's books and papers and paying the appraisers, were all connected with the appraisal and were covered by the provision of the policy relating to that subject.

The appellant, however, to sustain its appeal takes the broad

ground that when the defendant permitted the adjustment to proceed after knowledge of the forfeiture, it waived the forfeiture and the policy was fully reinstated. This contention rests upon the proposition that the acts of the company were in affirmation of the policy, and it could not affirm the policy and at the same time deny its validity. In other words, it could not recognize the policy as an existing contract for the purposes of appraisal, for the examination of books and papers and the examination of parties, and still repudiate it upon the ground that it was forfeited by reason of the action to foreclose the mortgage. It claims that when the company acquired knowledge of the foreclosure, and, hence, the condition of the policy was broken, and it deliberately recognized its existence for the purpose of appraisal, it constituted a reaffirmance of the contract and it continued.

The case of *Titus* v. *Glens Falls Ins. Co.* (81 N. Y. 410) is relied upon by the plaintiff, and claimed to be decisive of this question. In that case it was asserted that the policy was void by reason of the foreclosure of a mortgage upon the property insured. The defendant, after it had notice of the proceeding, required the insured to appear and be examined, and the court held that the insurance company had the right to make the examination only under the policy, and by exercising that right it recognized its validity, subjected the insured to trouble and expense, and thus waived the forfeiture occasioned by the foreclosure. The policy in that case provided that the use of general terms, or language less than a distinct, specific agreement, clearly expressed and indorsed on the policy, should not be construed as a waiver of any printed or written condition or restriction therein. It is said that that provision is as broad and comprehensive as the condition in the standard policy, and, hence, that that case is an authority sustaining the plaintiff's contention.

The question as to what constitutes a waiver of a forfeiture under the provisions of a fire insurance policy, has often been considered by this court. Thus, in *Weed* v. *L. & L. Fire Ins. Co.* (116 N. Y. 106) it was decided that, to establish a

waiver of a forfeiture in a policy of insurance, the proof must show a distinct recognition of the validity of the policy after a knowledge of the forfeiture by the person by whom it is claimed such forfeiture was waived.

In *Roby* v. *A. C. Ins. Co.* (120 N. Y. 510, 518) it was declared that where, after knowledge of the forfeiture of a policy, the insurer recognizes its continued validity, does acts based thereon, and requires the insured, by virtue thereof, to do some act or incur some trouble or expense, the forfeiture is, as a matter of law, waived, and the waiver need not be based upon any new agreement or upon estoppel. In that case it was said that " the policy in question was void or valid as a whole. If any part was valid, it was all valid. The defendant could not enforce any part without practically admitting that it was operative in all its parts."

*Pratt* v. *D. H. M. F. Ins. Co.* (130 N. Y. 206) is to the effect that where the agents or committee of an insurance company, after being apprised of facts affecting the policy, asked the insured to fill out the blank proofs of loss which they gave him, called for his books, required him to furnish information which they knew involved trouble and loss of time for him to obtain, it was a ratification of the policy and a waiver of the forfeiture.

It was decided in *Armstrong* v. *A. Ins. Co.* (130 N. Y. 560) that, while a waiver of a condition of forfeiture contained in a policy of insurance need not be based upon a technical estoppel, yet, in the absence of an express waiver, some of the elements of an estoppel must exist, and that the insured must have been misled by some action of the company or it must have done something after knowledge of a breach of the condition, which could only be done by virtue of the policy or have required something from the assured which he was bound to do only at the request of the company under a valid policy, or have exercised a right which it had only by virtue of such policy. In that case it was held, as it was in the *Titus* case, that a waiver could not be inferred from mere silence, but would require some affirmative action on the

part of the insurer which indicated that it intended to waive the result of the plaintiff's breach.

*Bishop* v. *A. Ins. Co.* (130 N. Y. 488) is to the effect that a company issuing a policy containing a provision that it shall not be modified or changed except in writing signed by it, may, by its conduct, estop itself from enforcing the provision against a party who has acted in reliance upon such conduct.

Again, in *Ronald* v. *M. R. F. L. Assn.* (132 N. Y. 378) it was in effect said that in the absence of any agreement, a waiver of forfeiture of a policy results only from negotiations or transactions with the insured, by which the insurer after knowledge of the forfeiture recognizes the continued existence of the policy, or does acts based thereon, or requires the insured, by virtue thereof, to do some act or incur some expense or trouble.

*Quinlan* v. *P. W. Ins. Co.* (133 N. Y. 356) is, in many respects, similar to the case at bar. In that case the policy contained the same provisions as the policy in suit relating to proceedings to foreclose a mortgage, and also as to the power of an agent to waive any of the conditions or provisions of the policy, and it was held that the provisions in a policy to the effect that no representative of the company should have power to waive any condition or provision except by writing indorsed upon the policy, were valid, and that the condition that such waiver was to be written upon the policy was of the essence of the authority of the agent to act, and that a consent or act not so indorsed was void. (Citing *Walsh* v. *Hartford Fire Ins. Co.*, 73 N. Y. 10; *Marvin* v. *Universal Life Ins. Co.*, 85 N. Y. 278.) Of that case it may be said, however, that it was held that the agent had no authority whatever to bind the company in writing or otherwise, or to waive any condition of the policy.

In *Kiernan* v. *Dutchess County Mut. Ins. Co.* (150 N. Y. 190) it was held that when an appraisal of the loss under a fire insurance policy is proper in any event, the fact that one was had at the request of the company has no bearing upon the question of forfeiture.

54

The question of waiver was also considered in *Van Tassel* v. *Greenwich Ins. Co.* (151 N. Y. 130), where it was in effect held that, in the absence of a subsequent waiver, the rights of the insured are to be determined as of the date of the fire, and that to establish a waiver a preponderance of evidence is requisite.

In *Walker* v. *Phœnix Ins. Co.* (156 N. Y. 628), where an insurer, after having made a contract of fire insurance, in ignorance of the existence of a chattel mortgage which rendered the insurance voidable, learned of the existence of the mortgage and thereafter treated the policy as valid and put the insured to trouble or expense on account thereof, it was held that those acts were evidence from which the jury might find a waiver of a forfeiture.

This court has several times held that the provisions in a standard policy, restricting the power of an agent to waive any of its conditions except in a particular manner, cannot be deemed to apply to the conditions which relate to the inception of the contract, where the agent delivered it and received the premium with a knowledge of the true situation. (*Wood* v. *A. F. Ins. Co.*, 149 N. Y. 382.)

Although the decisions of this court, of which we have made this brief review, seem to warrant the conclusion that an insurer, even under the provisions of a standard policy, may estop itself from claiming, or may waive, a forfeiture under its conditions by its acts and the requirements it makes of the insured after knowledge of the forfeiture, still, the circumstances and acts which are required to constitute such an estoppel or waiver seem to be quite firmly established. Thus, in the absence of an express waiver, at least, some of the elements of an estoppel must exist. The insured must have been misled by some act of the insurer, or it must, after knowledge of the breach, have done something which could only be done by virtue of the policy, or have required something of the assured which he was bound to do only under a valid policy, or have exercised a right which it had only by virtue of such policy. Such an estoppel or waiver must be

established by the person claiming it by a preponderance of evidence, and neither an estoppel nor a waiver of the breach of a condition after forfeiture, by reason thereof, can be inferred from mere silence or inaction.

Applying these principles to the case under consideration, it becomes manifest that the plaintiff's appeal cannot prevail. The most that the plaintiff has established by the proof is that for a month or more after the defendant became aware of the fact that the policy was forfeited by the commencement of the foreclosure action and until the proofs of loss were furnished, the defendant simply remained silent and inactive. Upon receiving the proofs, however, the defendant immediately notified the plaintiff that its policy had been forfeited and was void, and since that time it has performed no act inconsistent with that claim. The plaintiff has in no way been misled by any act or statement of the defendant. It has done nothing under the policy, has exercised no right by virtue of it, nor has it required the plaintiff to perform any act which it was required by the policy to perform. The most that can be said as to the continuance of the appraisal is that the defendant did nothing, and whatever was done by the plaintiff was voluntary.

Under these circumstances we have no doubt as to the correctness of the decisions below, and, hence, the judgment should be affirmed, with costs.

All concur.

Judgment affirmed. _____