KELLOGG, J. (dissenting).   The fourth clause of the written as-signment of Thomas Lape, fairly construed, has reference only to the promissory notes "made or indorsed" by Thomas Lape, the assignor. The fifth clause refers only to the individual indebtedness of the assignor.   If the assignment should be otherwise construed, and made to include co-partnership debts, then the creditors of the co-partnership are preferred to the individual creditors of the assignor. They take all the co-partnership assets to the exclusion of the individual creditor, and then share equally in the assets of the individual assignor.   At common law this was permissible, and solely on the ground that the assignor had a right to prefer one creditor over another, disregarding all equitable rules.   It was only by the voluntary exercise of that common-law right that this could be done.   By the exercise of this preferential power the individual creditor might be stripped of all individual assets which by the rules of equity he was entitled to.   This power to prefer was by the law of 1887 limited to one-third of the estate.   As to the remainder, the assignor was made powerless to defeat the existing laws as to equitable distribution. Any different construction would work great hardship to the individual creditor.   If the individual creditor could be permitted to share with the co-partnership creditor, it would be different; but in favor of the co-partnership creditor the equitable rule prevails, and co-partnership property must go to pay co-partnership debts.   The equitable rule that individual property shall go to pay individual debts is as well understood, and the trading world acts upon it in its dealings with the individual.   This rule could not be defeated except by the debtor himself, and his power to defeat it, as curtailed by the act of 1887, leaves the rule in force, as it properly and equitably should be, as to that portion of the assets of the individual set free from the debtor's power to determine to what creditors it should go.

---

(59 App. Div. 321.)

HAGADORN v. MASONIC EQUITABLE ACC. ASS'N OF THE WORLD.

(Supreme Court, Appellate Division, Third Department.   March 6, 1901.)

1. INSURANCE—ACCIDENT POLICY—TOTAL DISABILITY—EVIDENCE.
    Testator, a physician, was injured by a lunatic kicking him in the face, causing some hemorrhage at the nose and some pain and discoloration immediately, but not interrupting the usual routine of his profession. Thirty-six days thereafter testator suffered a stroke of paralysis, as the result of such injury, and for the first time was compelled to cease his active practice.   Defendant had insured the testator from accidents which immediately and wholly disabled him from transacting any and every kind of business pertaining to the insured's occupation.   *Held*, in an action on the policy, wherein the testator was alleged to have been injured on the day of the paralysis, that the facts were insufficient to show a total disability resulting immediately after the accident, and hence a directed verdict for the defendant was improperly refused.

2. SAME—NOTICE OF INJURY—NO WAIVER OF NOTICE.
    The payment of assessments on an accident policy, the sending of blanks to assured to make proof of claim, permitting the assured to ex-amine the books of the insurance company, and the examination of the body of assured after death, do not constitute a waiver by the insurance company of the notice of injury required in the policy; and hence it was

error for the court to have submitted the question to the jury on such facts.

Appeal from trial term, Schoharie county.

Action by Carrie E. Hagadorn, as executrix of the estate of William Hagadorn, deceased, against the Masonic Equitable Accident Association of the World, to recover on an accident policy. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, and SMITH, JJ.

McBurney & McBurney (Elgin L. McBurney, of counsel), for appellant.

Eugene E. Howe, for respondent.

KELLOGG, J. The appeal in this case presents several questions for our determination, and the principal questions may be stated as follows, viz.: Was there sufficient evidence of total disability of the assured, resulting from the accident, within 30 days from the date of the accident, to warrant the submission of the case to the jury? Was there any evidence of waiver of notice of the accident, which authorized the submission to the jury of that question?

The policy held by the assured, William Hagadorn, at the time of the accident, contained a promise to pay, in these words:

"The sum of twenty-five dollars per week, for a period not exceeding fifty-two consecutive weeks, as indemnity for loss of time resulting from bodily injury so effected during the life of this certificate through external, violent, and accidental means, which shall, independently of all other causes, immediately and wholly disable him from transacting any and every kind of business pertaining to occupation above stated."

It will be observed that the benefit to be paid is to be paid only in case the assured is "wholly disabled." No partial disability is contemplated. The assured was a physician in general practice. In attending one of his patients, a lunatic, he was kicked by the patient on the left side of the face and over the eye. This was on March 4, 1896. It produced immediately some hemorrhage at the nose and some pain and discoloration, but was not of sufficient severity to immediately interrupt the usual routine of his business or profession. He continued to transact the "business pertaining to his occupation" as theretofore, and gave no notice of the accident to defendant until April 23d following,—50 days after the occurrence. On April 9th the assured suffered a stroke of paralysis of the right side, and thereupon became for the time being wholly disabled. The cause of the paralysis is traced to the accident of March 4th. On the 9th of April, before the assured became paralyzed, he transacted as usual "the business pertaining to his occupation," and made two visits to his patient, the lunatic, at a distance from his office of some 40 rods. It is obvious that, if the assured did not become "wholly disabled from transacting any and every kind of business pertaining to his occupation" until April 9th, the total disability did not result within the 30 days from the date of the accident, and plaintiff has no cause of action under the policy. It is claimed by respondent, however, that

there is evidence in the case from which the jury had a right to find that the assured was wholly disabled before April 9th, before he became paralyzed, and it is of importance to consider what the assured himself believed and stated on this point. On April 29th the assured sent in his proofs to establish his right to the promised benefits. He answered the following questions in the following manner:

"Q. Describe nature and extent of injury. A. Nasal abscess producing total paralysis of the right side of the body. Q. How long confined to your bed? A. For twenty days. From the 9th of April to 29th of April, 1896. Q. Your house? A. Four days. From March 28 to April 1, previous to last attack. Q. Wholly disabled? A. For 20 days. From April 9 to April 29, 1896."

The complaint in the action is verified by the assured, William Hagadorn, on October 13, 1896, and alleges:

"That the said William Hagadorn * * * on or about the 9th day of April, 1896, * * * sustained severe bodily injuries and received a shock of paralysis. * * * That said William Hagadorn has been wholly disabled from transacting any and every kind of business pertaining to his occupation aforesaid from the 9th day of April to the 2d day of October, 1896."

There is no suggestion in the complaint of being at any time wholly disabled prior to April 9th.

The testimony of the assured was taken and read upon the trial. He says:

"From the 4th of March until April 9, 1896, I felt apprehensive, and told my wife that I was going to have trouble from that pain in my head during that period. I noticed my legs were numb on the 28th of March. My left leg was numb for about two hours. It was clumsy, but I could walk by walking with a cane, and it lasted about two hours, and then disappeared and wore off. It was the left leg. It was numb from the foot up to the thigh. The numbness came on quickly at the time,—on March 28th, I think. I rode up to see Eugene Richtmyer on that day, just in the edge of the village, about forty rods from my office, and during the next two or three days I felt no numbness. * * * On the 30th of March, 1896, when Dr. Persons was present, I had a numb spell. * * * I got up and walked across the floor, and dropped a book, as my left hand could not hold it. That spell lasted three or four hours, and no part of the arm was numb except the left hand up to the wrist. I did not experience any numbness after that for three or four days, and not until I had the paralysis on April 9, 1896. * * * On the 28th of March, when I had the numbness, I laid down a little while. Can't tell how long. * * * I attended Eugene Richtmyer from March 4, 1896, every day up to April 9, 1896. On some of these days I made more than one visit. He lived about forty rods from my house, and I rode most every time."

He further testifies to many other professional visits, continuing daily from March 4th to April 9th, inclusive. On March 27th and 28th he visited a patient (Mrs. Brown) a mile from his house. On March 31st he visited a patient (M. B. Sternberg) at North Blenheim, eight miles away. Visited a patient (wife of Elmer Lewis) four times on April 1st.

The claim of the plaintiff on the trial was that there was some evidence from which the jury might find that the assured was wholly disabled on the 28th March, and continuing to April 2d, but no claim is made of such disability between April 1st and April 9th. The evidence of the assured given above is nowhere in the case contra-

dicted, nor is there other evidence which makes the facts relating to his disability prior to April 9th more favorable to plaintiff's contention. Some evidence is given by Dr. Persons, and some by the wife of the assured; but it is all consistent with what the assured testified to, and does not add anything except in corroboration. We must therefore concede from the evidence of the assured that when proof of claim was made on April 26, 1896, and when the complaint was verified October 13, 1896, there was no idea in the mind of the assured that he was "wholly disabled" at any time prior to April 9th. We must further conclude from his testimony that at no time before April 9th was he so affected by the accident of March 4th as to be wholly disabled from transacting the business pertaining to his occupation in the usual way; that at no time was he in such condition as to be unable to visit his patients; that on March 28th and 31st and April 1st he visited patients a long distance from his office; that on every day, including March 28th, 29th, 30th, 31st, and April 1st, he visited the patient Richtmyer at a place 40 rods from his office; that during the days last named his incapacity to transact his business was no greater than on previous days, except for the numbness of the left leg, continuing for about two hours on March 28th, which made a cane necessary for that length of time to enable him to walk about, and the numbness of the left hand on the 30th March, continuing for about three or four hours; that at no time was he confined to his bed. That his disability was partial while the headache continued, which seems to have been from March 4th to April 9th, and during the hours when the numbness was present, may well be; but that he was at any time before April 9th wholly disabled is conclusively negatived by his daily acts. The question of disability is always a question of fact, but whether there is any proof of the fact is a question for the court. I do not find in this case any proof whatever tending to establish the fact that the assured was wholly disabled before April 9th. The proof is all to the contrary. It was therefore error for the learned trial justice to submit such proof to a jury. The motion made at the end of the trial to dismiss and for nonsuit on this particular ground should have been granted.

It may be noted here and in this connection that had there been any proof of total disability on March 28th, or on any of the 3 days following, notice to the company of such total disability given on April 23d would not be a notice within 10 days, as the policy required, nor notice within 10 days after the disability had developed; nor do the facts in the case show any reasonable excuse for failure to give such notice. The failure to give notice within 10 days after April 9th may perhaps be excused by reason of the unconscious condition of the assured and the ignorance of the family as to the existence of the policy, but no such excuse can be urged for failure to notify of total disability resulting from the accident developed to the knowledge of the assured March 28th; for during all the time thereafter up to April 9th he was transacting business, and able to give the notice. So, therefore, nothing in any case can be claimed from any possible showing of the existence of total disability on March 28th or any of the three subsequent days. If it should be held that the 10

days does not, under the wording of the policy, begin to run from the date of the accident, then it certainly must begin to run from the first moment that the injury—total disability—is apparent. In any and every case this 10 days must begin to run within the 30 days from the date of the accident, saving, of course, cases where there exists legal excuse to cover a failure to give notice. This must be so, since the total disability must occur within 30 days of the accident, upon which occurrence the 10 days must begin to run, and this is giving to plaintiff the benefit of the liberal construction as to notice, by plaintiff claimed. The 30 days from date of the accident expired April 3d. From April 3d to April 9th the assured had no legal excuse for failure to give notice. He had none until the night of April 9th. If the total disability occurred at any time prior to April 1st, it is apparent that the full 10 days expired before the paralysis occurred.

The learned trial court submitted to the jury the question of waiver on the part of defendant of the 10-days notice of the accident or injury. I find in the record no evidence of such waiver, and none which a jury had the right to consider as evidence of such waiver. Here there was no forfeiture of the policy claimed by defendant. The policy was in force notwithstanding the accident and the claim made on account of it. The plaintiff had a right to continue it by paying such assessments as should be lawfully levied, and continue it as a protection against future accidents; and the sending to the assured notice of such assessment subsequent to the accident had no bearing whatever on the claim made, or the defense to the claim as made. The sending of blanks to make proof of claim was no waiver, for at that time defendant had no notice of the time when the accident occurred, and in its letter informed the claimant that it sent the blanks without prejudice to any defense it might have. The application to examine the books of defendant, which was willingly granted, could not have misled plaintiff, or have given plaintiff the impression that the defense of lack of notice had been abandoned. The books were being examined to get proof of this very defense; some data to fix the date when total disability occurred; a date from which to reckon the 10 days, if it was to be reckoned from the date of injury, and not from date of the accident. After the death of the assured, which occurred in 1899, over two years after the answer herein had been served and this particular defense therein declared, the defendant applied for permission to make external examination of the body of the assured, which was granted. How this fact bears upon the waiver of the defense of lack of notice, or how it could be misleading to the plaintiff, is not apparent.

We are well aware that the principle of estoppel or waiver, as defined for the benefit of insurance companies, is at this day difficult to recognize or to apply in the trial of cases, but I think we are right in concluding that it still has some of the old distinguishing features which the court of last resort in this state has pointed out. In Walker v. Insurance Co., 156 N. Y. 633, 51 N. E. 392, the court said:

"While express waiver rests upon intention, and estoppel upon misleading conduct, implied waiver may rest upon either; for it exists when there is an intention to waive, unexpressed, but clearly to be inferred from circum-

stances, or where there is no such intention in fact, but the conduct of the insurer has misled the insured into acting on a reasonable belief that the company has waived some provision of the policy. While the principle may not be easily classified, it is well established that if the words and acts of the insurer reasonably justify the conclusion that, with full knowledge of all the facts, it intended to abandon or not to insist upon the particular defense afterwards relied upon, a verdict or finding to that effect establishes a waiver, which, if it once exists, can never be revoked."

Tested by this declaration, what was there in the evidence from which a jury had a right to find that defendant had waived the defense of failure to notify? It can as well be said that the defendant waived its right to make any defense whatever, and, had it been submitted to the jury to say whether the defendant·had not waived every defense, no doubt they would have answered in the affirmative. The submission of this question to the jury was challenged by defendant's request to charge and the ruling excepted to.

The appellant has other exceptions in the case. Exceptions relating to the court's construction of the policy and as to the time when total disability must occur,—whether immediately upon happening of the accident, or within 30 days thereafter; of the time when notice must·be given,—whether within 10 days of the date of the accident, or within 10 days of the first development of total disability. But as to these we express no opinion.

The judgment should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.