content to be taken at its word, and stand by the forfeiture which it itself declared.

The rule of damages adopted is complained of, principally upon the ground, as is asserted by the counsel for the appellant, that the Northampton annuity table, found in the court rules, was used to determine the expectancy of life of the plaintiff, instead of the Northampton tables of mortality. The Northampton tables of mortality were introduced in evidence without objection. Two witnesses were called to prove computations. They testified that the computations they made, which formed the basis of the verdict, were from the "Northampton tables." Nothing appears but what these witnesses used the proper tables, and we must assume that they used the tables which were put in evidence. The defendant made no proof that the expectancy of life of the plaintiff was different from that proved by the plaintiff. This could have been easily done if the plaintiff's figures were wrong. The plaintiff was uninsurable, and the rule of damages adopted, we think, was correct, and was substantially that indicated in Speer v. Phœnix Mutual Life Insurance Co., supra, and in Keyser v. Mutual Reserve Fund Life Association, 60 App. Div. 297, 70 N. Y. Supp. 32, and in Toplitz v. Bauer, 161 N. Y. 325, 55 N. E. 1059. Besides, the defendant does not seem to have raised the objection that the proof tended to establish an improper measure of damages.

Objection was made to the second cause of action in the complaint, on the ground that it did not specifically set forth the allegations of tender of premium and refusal and repudiation of contract. These facts were alleged at length in the first cause of action as to one policy, and were referred to as repeated in respect to the other policy in the second cause of action, but were stated to be omitted for the sake of brevity and to avoid repetition. There could have been no misapprehension on the part of the defendant as to what the plaintiff intended to plead, and we think the court properly overruled the defendant's objection, especially as the pleading was allowed to stand in this form down to the time of trial.

We see no error calling for a reversal of the judgment, and it must be affirmed, with costs.

Judgment and order unanimously affirmed, with costs. All concur.

---

NUGENT v. RENSSELAER COUNTY MUT. FIRE INS. CO.

(Supreme Court, Appellate Division, Third Department. June 29, 1905.)

1. FIRE INSURANCE—ACTION ON POLICY—COMPLAINT—FAILURE TO INCLUDE COPY OF POLICY.

Where, in an action on a fire policy, no objection was made to the plaintiff's failure to attach a copy of the policy to the complaint until the opening of trial, and the answer admitted the making of the policy as alleged in the complaint, and it appeared that the defendant has one form of policy, and that it is the duty of its secretary to keep a record of all its policies of insurance, it was proper to treat the complaint as including a copy.

[Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Insurance, § 1591.]

**2. SAME—FALSE REPRESENTATIONS—INCUMBRANCES—WAIVER.**

Where an insurer knew that there was a mortgage on the property
when the fire policy was written, but it recognized the policy by requiring
proofs of loss by sending them back for correction and by requesting a
conference for an adjustment, whereby insured incurred expense, there
was a waiver of a condition against false representations as to incum-
brances.

[Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Insurance, § 1074.]

**3. SAME—FRAUD—AMOUNT OF LOSS.**

A provision·in a fire policy that it shall be void in case of any fraud
or false swearing by insured touching any matter relating to the insur-
ance or the subject thereof before or after a loss, means a false and
fraudulent statement, and a mere misstatement of the loss in the proofs,
based upon an erroneous estimate of value, does not avoid the policy.

Appeal from Trial Term, Rensselaer County.

Action by Andrew Nugent against the Rensselaer County Mutual
Fire Insurance Company. From a judgment in favor of plaintiff,
and from an order denying a motion to set aside the verdict and for
a new trial, defendant appeals. Affirmed.

Argued before PARKER, P. J., and SMITH, CHASE, CHES-
TER, and HOUGHTON, JJ.

Long & Maxwell (John K. Long, of counsel), for appellant.
Chester G. Wager (John B. Holmes, of counsel), for respondent.

CHASE, J. The defendant is a domestic mutual fire insurance
company doing business in the county of Rensselaer, N. Y. It
has a board of directors and officers, including a president, secre-
tary, and treasurer, and a vice president, who is also the general
manager of the company. It is made the duty of the general man-
ager of the company to approve or disapprove applications for in-
surance and adjust losses. Policies of insurance are generally is-
sued for the company by the secretary bearing the signature of the
president and secretary. On the 2d day of January, 1904, the plain-
tiff applied to a local agent and one of the directors of the defend-
ant for a policy of insurance on the buildings on the farm occupied
by him and owned by the heirs at law of his deceased father, and
also for a further policy of insurance on certain personal property
while contained in said buildings, which personal property was
owned by the plaintiff. A written application for the insurance on
said personal property was prepared by said director and signed by
the plaintiff. Such application was forwarded to the secretary of
the company. The general manager examined said application,
approved thereof, and directed the secretary to issue a policy, which
he did, and it was forwarded to the plaintiff about the 12th day of
January, 1904. On the 31st day of January, 1904, part of the build-
ings so insured were burned, together with their contents. The
personal property so insured consisted of household furniture, pro-
visions, and wearing apparel, live stock, wagons, harness, sleighs,
etc., and farm produce. The horses, cows, two wagons, hay, po-
tatoes, oats, buckwheat, barley, and peas so insured were included
in a chattel mortgage previously given by the plaintiff to one
Reynolds, and duly filed in the town clerk's office of the town

where the plaintiff so resided. The amount of said mortgage was $1,000. The application for such insurance signed by the plaintiff stated "that he is the sole owner of the property hereby sought to be insured and that the same is in no way incumbered." · It is claimed by the plaintiff that at the time he made said application he stated to the director of the defendant taking the same that there was a chattel mortgage of $1,000 on the personal property (but not on the household goods), and the name of the mortgagee. This is disputed by the director, and it is claimed by the defendant that the evidence relating thereto should not have been received to vary the terms of the written application, and for the further reason that no such claim is alleged in the complaint; but the exceptions relating thereto are immaterial if the county court was right in its determination of the case, as will be hereinafter stated. It is not disputed that such director, prior to taking the application, had heard by neighborhood talk that the plaintiff had borrowed money from Reynolds to buy stock, and had given a chattel mortgage on part of the property sought to be insured. But he says that, inasmuch as the plaintiff said to him that the property was not incumbered, he believed the statement of the plaintiff, and assumed that there was a mistake in the information that he had received. The annual meeting of the defendant was held on the 19th day of January, 1904, and the director of the defendant who took the application, when on his way to such meeting, was told by the mortgagee that he had a chattel mortgage on the personal property, and that the mortgage itself could be examined by going to the town clerk's office. The director who took the application visited the scene of the fire on the morning thereafter, and before the burning was over. Plaintiff notified said general manager of the fire. On the 4th day of February, 1904, said general manager was told of the chattel mortgage, and on the 5th day of February, 1904, he went to the town clerk's office and examined the same, and on that day he, with the director of the company who took the application, went to the scene of the fire, and examined the ruins, and then to the house of a neighbor, where proof of loss on the buildings was prepared by said general manager, and signed and sworn to by the plaintiff as agent for the owners, and the plaintiff paid said general manager $1.50 for his trouble in preparing said proofs of loss. The general manager started to make out the proofs of loss as to the personal property, but the plaintiff did not have time to think over the details of his loss, and he was told by said general manager to make out the proofs of loss on the personalty and deliver them to said director. Thereafter, and about February 10, 1904, the proofs of loss were completed. The director assisted the plaintiff in making such proofs of loss, and the plaintiff paid him $1.50 therefor. The proofs of loss so prepared included a statement of the chattel mortgage existing on the property, and that part of the proofs of loss was written therein by said general manager. After the proofs of loss were received by the company, some errors were discovered in details, and as to the place where they were signed, and said general manager directed the secretary to return them for correction, and

they were so returned to said director, and he sent for the plaintiff, and the·suggested corrections were made by the plaintiff. It was necessary for plaintiff to travel six miles for the purpose of complying with such request. The proofs of loss were returned to the company February 16, 1904. On the 19th of February, 1904, the plaintiff was notified in writing to attend at the office of the company, in which notice it is said: "Our executive board will meet in the office of the company on Saturday, February 27th, at 1 p. m., to consider your claims, and in order to perfect the adjustment it will be necessary for you to be present." The defendant did so attend, and his expenses in so doing were $4.50. He was questioned in regard to the fire, the amount of his loss, and the existence of such chattel mortgage, and after a consultation by the president, secretary, general manager, and a director of the company the plaintiff was told that his proofs of loss were rejected, and his claim was disallowed, "on the grounds that he had concealed the fact that there was a chattel mortgage on the property when the application was made, and that he had overestimated the value of the articles alleged to have been lost." The proofs of loss were never returned to the plaintiff, and they were never objected to or rejected as proofs of loss other than in the general way in connection with the rejection of the .claim as stated. It does not appear that the defendant ever suggested that the plaintiff's policy was void prior to February 27, 1904.

At the opening of the trial the defendant moved that the plaintiff's complaint be dismissed upon the ground that it does not state facts sufficient to constitute a cause of action. Plaintiff's complaint is in the usual form in actions to recover for a loss upon policies of insurance, and in the complaint it refers. to the policy, and states, "Said policy of insurance .No. 9,376 is hereby made a part of this complaint." It appears that the complaint was served without having a copy of such policy of insurance attached thereto. No objection was made to the complaint by reason of the failure, by inadvertence or otherwise, to attach to the complaint a copy of the policy, as stated therein, until the opening of the trial. The answer admits the making of the policy as alleged in the complaint, and it appears that the defendant has one form of policy, and ·that it is the duty of its secretary to keep a record of all its policies of insurance. The defendant therefore had a record of this policy No. 9,376 in its possession, and the policy was actually produced by the plaintiff at the opening of the trial. We think the county court was right in treating the complaint as including a copy of the policy ·of insurance.

At the close of the testimony the defendant moved for a direction ·of a verdict in its favor, and the plaintiff moved for direction of a verdict in his favor. The court, after an adjournment, in its decision of the motions said:·

"I shall deny the motion of the defendant for a direction of a verdict. I shall deny the motion of the plaintiff for the direction of a verdict in so far as it affects the issue raised on that clause of the policy which reads, 'It is also expressly understood and agreed between the company and the assured

that this entire policy shall be void in case of any fraud or false swearing by the assured touching any matter relating to this insurance or the subject-matter thereof whether before or after loss,' as I feel that under this clause and condition of the policy there is raised under the pleadings and by the evidence a question of fact upon which it is proper that the jury should pass. I rule as a matter of law that the breach of the condition of the policy and the forfeiture caused by reason of the existence of the chattel mortgage was by the conduct of the defendant and its officers in telling the plaintiff to prepare proofs of loss on the personal property, in sending back the proofs of loss to be corrected, as shown by the evidence, in requesting the plaintiff to come to the office of the company at Sandlake for the purpose of adjusting the losses, in causing the plaintiff to incur trouble and expense thereby, and by examining the plaintiff to a considerable extent, among other things, under the clause of the policy mentioned, during all of which time the defendant knew of the forfeiture alleged, having heard of the existence of the mortgage, and having found the chattel mortgage in the town clerk's office at Petersburgh, and the plaintiff in the first instance of preparing proofs of loss having acknowledged the existence of the mortgage, waived whatever forfeiture there may have been by reason of the chattel mortgage or the concealment or misrepresentation of any material fact or circumstance, if such there was, concerning the same. The question as to whether there was any fraud or false swearing by the assured touching any matter relating to the insurance or the subject thereof, whether before or after loss, involves a question of fact to be submitted to the jury."

All of the testimony relating to what occurred after the fire down to and including the refusal of the defendant to pay the plaintiff's loss was brought out by the defendant, or by questions asked and answered on behalf of the plaintiff without objection on the part of the defendant. The undisputed testimony as to what occurred after the fire was before the court when the motions were made for the direction of a verdict as stated, and, if the court was right in holding as a matter of law upon such undisputed testimony that the defendant had waived any right to insist that the policy of insurance was void by reason of the statement in the application that such personal property was unincumbered, it is unnecessary to consider the other objections to the recovery urged by the defendant.

In Titus v. Glens Falls Insurance Company, 81 N. Y. 410, the court say:

"But we are of opinion that the claim of the plaintiff is well founded that the forfeiture caused by the foreclosure proceedings was waived by the defendant. After the fire, and after the defendant had notice of the proceedings, it required the insured to appear before a person appointed by it for that purpose, to be examined under the clause in the policy hereinbefore mentioned, and he was there subjected to a rigorous inquisitorial examination. It had the right to make such examination only by virtue of the policy. When it required him to be examined, it exercised a right given to it by the policy. It then recognized the validity of the policy, and subjected the insured to trouble and expense, after it knew of the forfeiture now alleged; and it cannot now, therefore, assert its invalidity on account of such forfeiture. When there has been a breach of a condition contained in an insurance policy, the insurance company may or may not take advantage of such breach and claim a forfeiture. It may, consulting its own interests, choose to waive the forfeiture, and this it may do by express language to that effect, or by acts from which an intention to waive may be inferred, or from which a waiver follows as a legal result. A waiver cannot be inferred from its mere silence. It is not obliged to do or say anything to make the forfeiture effectual. It may wait until claim is made under the policy, and then, in

denial thereof, or in defense of a suit commenced therefor, allege the for-·· feiture. But it may be asserted broadly that if, in any negotiations or trans- actions with the insured, after knowledge of the forfeiture, it recognizes the continued validity of the policy, or does acts based thereon, or requires the insured by virtue thereof to do some act or incur some trouble or expense, the forfeiture is, as matter of law, waived: and it is now settled in this court after some difference of opinion, that such a waiver need not be based upon any new agreement or an estoppel."

In Roby v. American Central Insurance Company, 120 N. Y. 510, 24 N. E. 808, it is said in the headnote that:

"Where, after knowledge of the forfeiture of a policy, the insurer recog- nizes its continued validity, does acts based thereon, and requires the insured, by virtue thereof, to do some act or incur some trouble or expense, the for- feiture is, as matter of law, waived. Such a waiver need not be based upon any new agreement or upon estoppel."

In Kiernan v. Dutchess County Mutual Insurance Company, 150 N. Y. 190, 44 N. E. 698, where it was claimed by the defendant that there was a breach of warranty as to the insured property be- ing unincumbered by chattel mortgage, the court say:

"As a warranty is for the benefit of the company, it may take advantage of a forfeiture based thereon, or may waive the same if it thinks the latter course will better promote its interests. There may be a waiver by express agreement or through estoppel, but neither is required to effect that result, as words or acts from which an intention to waive may reasonably be in- ferred are sufficient, at least when acted upon. * * * While express waiver rests upon intention, and estoppel upon misleading conduct, implied waiver may rest upon either, for it exists when there is an intention to waive unexpressed, but clearly to be inferred from circumstances; or when there is no such intention in fact, but the conduct of the insurer has misled the insured into acting on a reasonable belief that the company has waived some provision of the policy."

In Walker v. Phœnix Insurance Company, 156 N. Y. 628, 51 N. E. 392, it is said in the headnote that:

"If, after having made, in ignorance of the existence of a chattel mortgage, a contract of fire insurance voidable for that reason, the company learns of the existence of the mortgage, and thereafter treats the policy as valid, or puts the insured to trouble or expense on account thereof, its acts are evi- dence from which a jury may find a waiver of the forfeiture."

In Gibson Electric Company v. Liverpool & London & Globe Ins. Co., 159 N. Y. 418, 54 N. E. 23, the Court of Appeals, reviewing many previous authorities, concluded with the statement that an insurance company may estop itself from claiming or may waive a forfeiture under a policy of insurance by its acts and the require- ments it makes of the insured after knowledge of the forfeiture. It further says:

"The insured must have been misled by some act of the insurer, or it must, after knowledge of the breach, have done something which could only be done by virtue of the policy, or have required something of the assured which he was bound to do only under a valid policy, or have exercised a right which it had only by virtue of such policy."

In this case the recognition of the policy by the defendant was unqualified and unconditional after it had full knowledge of the fact that there was a chattel mortgage upon the property when the application for the insurance was made, and also as to the details

thereof. Such full information and knowledge was received by the defendant not alone from the chattel mortgage itself on file, but from the express statements and admissions of the mortgagor, the insured. All of the facts having been known to the defendant before it unqualifiedly recognized the policy, and the facts connected therewith being undisputed, the court was right in holding as a matter of law that the defendant had waived the breach of warranty, if any, in the application.

In Pratt v. D. H. M. C. Ins. Co., 130 N. Y. 206–220, 29 N. E. 117–120, the court say:

"We see no reason for holding, and we have been referred to no case in this state which holds, that the officers of such a corporation [mutual insurance company] have less power to waive defects or ratify invalid policies than corresponding officers in stock insurance companies."

The plaintiff was in possession of the mortgaged property, and owned the same subject to the payment of an indebtedness for which he was personally liable. He had an insurable interest in the property. Am. & Eng. Ency. of Law (2d Ed.) vol. 13, 168.

It is provided in the policy that it shall be void in case of any fraud or false swearing by the assured touching any matter relating to the insurance or the subject thereof, whether before or after a loss. The defendant insists that the plaintiff was guilty of false swearing in overestimating the quantity and value of the personal property which he claimed to have lost by reason of the fire. It is not the purpose of such provision in the policy to put every insurer in danger of losing the entire benefit of his insurance if in an honest effort to determine and state the property lost by fire, and the value thereof, he inadvertently misstates the same or overestimates their value. A mere misstatement of the loss, based upon an erroneous estimate of value, which is but the expression of an opinion, does not operate to avoid the policy. The misstatement must be false and fraudulent. Cheerer v. Scottish Union & M. Ins. Co., 86 App. Div. 328, 83 N. Y. Supp. 730; Am. & Eng. Ency. of Law (2d Ed.) vol. 13, 342. Good faith and honest dealing are all that is required of a person in making proofs of loss under a policy of insurance after a fire. The verdict of the jury has determined that the plaintiff did not commit any fraud or intentionally swear false in his proofs of loss.

The record does not disclose any error requiring the reversal of the judgment, and it should be affirmed, with costs. All concur.